20-2340-pr
*Saeli v. Chautauqua County*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———

August Term, 2021

Argued: December 7, 2021     Decided: June 8, 2022

Docket No. 20-2340-pr

———

SAMUEL JAMES SAELI,

*Plaintiff-Appellant,*

— v. —

CHAUTAUQUA COUNTY, NY, CORRECTION OFFICER WILLIAM GENTHER,
CORRECTION OFFICER JASON STEENBURN,

*Defendants-Appellees.*[*]

———

B e f o r e:

LYNCH, CARNEY, and SULLIVAN, *Circuit Judges.*

———

[*] The Clerk of Court is directed to amend the caption as set forth above.

Plaintiff-Appellant Samuel James Saeli appeals from an order of the United States District Court for the Western District of New York (Siragusa, *J.*) granting summary judgment to Defendants-Appellees on his claims that two correction officers ("the Officers") and Chautauqua County ("the County") violated his constitutional rights. The district court held that there was no genuine dispute that Saeli had not exhausted his administrative remedies as required by the Prison Litigation Reform Act.

We conclude that the district court was correct that Saeli failed to present sufficient evidence to create a genuine dispute of material fact as to whether he had submitted a timely grievance related to his claims against the Officers. The district court erred, however, in holding that the Chautauqua County Jail's grievance policy applied to his separate claim against the County. By its plain terms, the grievance procedures did not apply to matters outside the jail captain's control, such as the County handcuffing policy that Saeli challenges here, and thus there were no administrative remedies for Saeli to exhaust with respect to that claim.

We therefore AFFIRM the judgment of the district court as to the Officers, VACATE the judgment with respect to the County, and REMAND to the district court for further proceedings consistent with this Opinion.

---

ANDREW RHYS DAVIES, Allen & Overy LLP, New York, NY, *for Plaintiff-Appellant.*

MICHAEL MCCLAREN (KEVIN G. COPE, SHANNON B. O'NEILL, *on the brief*), Webster Szanyi LLP, Buffalo, NY, *for Defendants-Appellees.*

---

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-Appellant Samuel James Saeli appeals from a June 30, 2020 order

of the United States District Court for the Western District of New York (Charles

J. Siragusa, *J.*) granting summary judgment on all claims to Defendants-Appellees

Chautauqua County ("the County") and Correction Officers William Genther

and Jason Steenburn ("the Officers") in this civil rights suit concerning the

County's policy of handcuffing inmates in an allegedly painful manner and the

Officers' use of force in extracting Saeli from his cell at the Chautauqua County

Jail ("the Jail"). The district court granted summary judgment because it

concluded that Saeli, who was proceeding *pro se* at the time, failed to provide

sufficient evidence to create a genuine issue of material fact as to whether he

complied with the Jail's grievance policy and exhausted all available

administrative remedies as required by the Prison Litigation Reform Act

("PLRA"), Pub. L. No. 104-134, Title VIII, § 803(d), 110 Stat. 1321 (1996), codified

as amended at 42 U.S.C. § 1997e.

Saeli, now represented by counsel, argues that he did not fail to exhaust all

available administrative remedies because (1) he did, in fact, timely submit an

informal grievance form describing his encounter with the Officers, but the Jail

failed to act on it, making the grievance process effectively unavailable to him;

and (2) the Jail's grievance policy excludes matters outside the jail captain's

control and thus was inapplicable to his claim against the County, which

3

challenged a handcuffing policy set by the Chautauqua County Sheriff, not the Jail.

We conclude that the district court was correct to grant summary judgment to the Officers but that it erred in granting summary judgment to the County. To the extent that Saeli contended that he timely submitted an informal grievance form on the date recorded on the form, no reasonable factfinder could accept that contention, because the form on its face describes events that occurred after that date. Saeli's more general contention that he submitted the form at some unspecified time in some unspecified manner, even if believed, would not suffice to create a genuine dispute as to whether he made a timely attempt at compliance with the grievance procedures. Contrary to the district court's conclusion, however, the Jail's grievance policy by its plain terms did not apply to Saeli's claim arising from the County's handcuffing policy, and thus there were no administrative remedies for Saeli to exhaust with respect to that claim.

We therefore AFFIRM the judgment of the district court as to the Officers, VACATE the judgment as to the County, and REMAND for further proceedings consistent with this Opinion.

4

## BACKGROUND

### I. Factual Background[1]

Saeli was detained at the Chautauqua County Jail between August 2016 and September 2018 pending trial on charges related to the sexually-motivated kidnapping of a teenage boy, charges on which he was ultimately convicted. During that detention, he was housed in the Jail's hospital unit due to health concerns.

The Jail's inmate handbook lays out a grievance policy for resolving inmate complaints. The grievance policy does not specifically identify which sorts of disputes it covers, but it categorically *excludes* certain issues: "Grievances regarding dispositions or sanctions from disciplinary hearings, administrative segregation housing decisions, *issues that are outside the authority of the jail captain to control*, or complaints pertaining to an inmate other than the inmate filing the grievance are not grievable issues." J. App'x at 385 (emphasis added). The grievance policy instructs aggrieved inmates to follow a multi-step process:

---

[1] The facts set forth below are drawn from the summary judgment record, taken in the light most favorable to Saeli, the non-moving party. *See Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020).

- Attempt to resolve your complaint or problem with your housing officer.
- If the housing officer cannot resolve your complaint, the housing officers will contact the shift supervisor who will decide if your complaint warrants filing a grievance or can be otherwise resolved.
- If the complaint cannot be resolved, the shift supervisor will contact the grievance coordinator and you will be issued a grievance [form].
- The grievance must be filed with the grievance coordinator within 5 days of the date of the act or occurrence that caused the complaint.
- If the grievance is too vague or does not provide enough information or evidence, it will be returned to you. You must resubmit it within two days with the appropriate correction or it will be denied.

*Id.* at 386.

The parties agree that in practice, the Jail requires inmates to initiate the first two steps, involving the housing officer and shift supervisor, by filling out and submitting an "informal grievance" form. *Id.* at 673. According to Saeli, inmates must ask a correction officer for an informal grievance form, at which point "that correction officer fills in the name of the grievant, the inmate's location and the date and time the [informal] grievance was given to the inmate." *Id* at 624. In other words, the inmate must request, receive, complete, and submit

6

an informal grievance form; and if the housing officer and shift supervisor are unable to resolve the inmate's complaint on the basis of that informal grievance form, the inmate will be "issued" a formal grievance form, which he must complete and submit to the grievance coordinator no later than five days after the incident complained of. The policy also sets out a process, not at issue here, for appealing an adverse decision regarding a formal grievance by the grievance coordinator.

On September 12, 2016, Saeli was handcuffed before being escorted from the Jail to a court appearance. Saeli found the manner in which he was handcuffed painful, and he alleges that he attempted to submit a timely informal grievance form pursuant to the grievance policy. Saeli further alleges that when he attempted to submit that first informal grievance form, an unnamed officer told him that the handcuffing policy followed by correction officers at the Jail was set by the County, that it was outside the Jail's control, and that it therefore was not grievable.

On September 24, 2016, Saeli was taking a shower in his cell when water began to pool in the shower stall and overflow onto the floor outside. Correction Officer Walsh, not a party to this appeal, noticed the water and called out to ask if

Saeli was okay. When Saeli did not respond, Walsh called for backup. Walsh ordered Saeli out of the shower, and Saeli alleges that when he exited the shower, nine officers had arrived on the scene and begun shouting orders at him. Genther then entered the cell and threw Saeli to the ground, at which point Steenburn entered the cell and joined Genther in kneeling on Saeli to hold him down while handcuffing him with his hands behind his back and the backs of his hands facing each other, palms facing outwards. Saeli alleges that he sustained multiple injuries from this incident, including cuts and bruises on his neck, back, wrists, and right hand, as well as neuropathy in his right hand.

Shortly after the September 24 incident, Saeli again made some attempt to avail himself of the Jail's grievance process. He began by filling out an informal grievance form, dated "09/25/16 1430," describing the shower incident. J. App'x at 735. Saeli alleges that he attempted to hand that form to Lieutenant Fuller, an officer not party to this appeal, but that Fuller responded, "don't hand that in" and gave the form back to him. *Id.* at 72; *see also id.* at 677. Saeli later testified that he took that statement and Fuller's "manner" of making it as an indication that Fuller might be "upset" and retaliate against him for filing a grievance. *Id.* at 753-54. While Fuller made no explicit threats, Saeli interpreted his statement as

8

containing an implicit "or else." *Id.* at 755. Saeli therefore took the form back and instead wrote a letter to the New York State Commission of Correction describing the incident. After receiving Saeli's letter, the Commission referred his complaint to the Chautauqua County Sheriff's Department, which opened an investigation into the shower incident.

At a disciplinary hearing on September 26, 2016, Saeli was found guilty of disobeying orders in connection with the shower incident and received a verbal reprimand. After the disciplinary proceedings, Saeli apparently revisited his informal grievance form and made a notation in the margin of that form explaining that he was disciplined for his conduct in connection with the shower incident.

The parties dispute what Saeli did next with the informal grievance form. Saeli asserts, based on sworn factual allegations in his memorandum of law in opposition to summary judgment[2] and the fact that the County produced a copy of the form during discovery, that he submitted the informal grievance form to

_____

[2] Since Saeli submitted a separate affidavit swearing to the factual assertions contained in his memorandum of law, we treat those assertions as the functional equivalent of a summary judgment affidavit. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002).

an unspecified officer in an unspecified manner on an unspecified date.
Defendants-Appellees deny that Saeli ever submitted the informal grievance
form to any correction officer and instead assert that he sent it to the Commission
of Correction, which later forwarded a copy to the Sheriff's Department.
Defendants'-Appellees' support for that theory is the testimony of a correction
officer that a "diligent search" failed to locate a copy of Saeli's grievance form in
the Jail's files, *id.* at 346, and the fact that the copy of the form in the record bears
a case number that matches a number that appears in Sheriff's Department
records related to the investigation of the incident. *Compare id.* at 149 *with id.* at
735.

## II.    Procedural History

On April 11, 2017, Saeli filed the first of his two complaints *pro se* in the
United States District Court for the Western District of New York. The initial
complaint named various defendants in addition to Defendants-Appellees, and
asserted Eighth and Fourteenth Amendment claims for excessive force, deliberate
indifference to a serious medical need, unconstitutional conditions of
confinement, and failure to protect, as well as a claim under the Americans with
Disabilities Act for failure to accommodate. On July 7, 2017, Saeli filed another

10

complaint under a different case number. Although it named a slightly different list of defendants, the second complaint asserted the same claims as the first, as well as an additional First Amendment retaliation claim and Eighth and Fourteenth Amendment claims challenging the conditions of confinement at the Jail and the fines imposed at the conclusion of the disciplinary proceeding.

On October 18, 2017, the district court consolidated the two cases, construing the July 7, 2017 complaint as a first amended complaint ("FAC"), and dismissed the FAC in part *sua sponte* pursuant to its authority to screen *in forma pauperis* complaints. *See* 28 U.S.C. §§ 1915(e), 1915A. The court allowed two excessive force claims – one against Officers Genther and Steenburn related to their use of force during the shower incident and the other against the County for maintaining a policy of handcuffing inmates in an allegedly painful manner – to proceed to service. The court concluded that the latter claim adequately alleged "that the County implemented this method of handcuffing as a County policy," J. App'x at 47, and thus complied with the requirements for § 1983 claims against municipalities set out in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The court dismissed all other claims without prejudice and granted Saeli leave to amend his complaint. Saeli filed his second amended complaint ("SAC") on

11

November 22, 2017, this time naming only the County and Officers Genther and Steenburn as defendants.[3]

In all three complaints, Saeli repeatedly asserted that he attempted to grieve the claims at issue in this appeal but that correction officers prevented him from doing so. Each complaint was composed on a form complaint for actions by inmates seeking damages pursuant to 42 U.S.C. § 1983 and included questions and answers about exhaustion of administrative remedies.

In the SAC, with respect to the handcuffing claim against the County, Saeli marked "Yes" in response to the question "Did you grieve or appeal this claim?" and explained, "I was told that the method and policy of handcuffing Plaintiff and others is outside the control of the jail and thus not grievable"; and in response to the prompt, "If you did not exhaust your administrative remedies, state why you did not do so," he wrote, "I was told by a jail official that the

---

[3] The SAC omitted the claims that the district court had dismissed without prejudice but added two new claims: a Fourteenth Amendment due process claim related to the Jail's handling of disciplinary proceedings and a Fifth Amendment self-incrimination claim related to the Jail's alleged practice of turning over recordings of inmates' phone calls to the Chautauqua County District Attorney. In a September 6, 2018 order, the district court again exercised its screening authority under 28 U.S.C. §§ 1915(e) and 1915A to dismiss the two newly added claims. Saeli does not challenge that dismissal on appeal.

12

method and policy on handcuffing Plaintiff is outside the control of the jail and thus is not grievable." J. App'x at 62.

With respect to the excessive force claim related to the shower incident, Saeli marked "Yes" in response to the question "Did you grieve or appeal this claim?" and explained, "Plaintiff tried to grieve this incident. Plaintiff asked for and received a grievance. Plaintiff completed it and handed it to Sgt[.] [*sic*] Fuller who handed it back to me and told me 'don't hand that in' and gave grievance back to Plaintiff"; and in response to the prompt, "If you did not exhaust [your] administrative remedies, state why you did not do so," he wrote, "When Sgt[.] [*sic*] Fuller handed the grievance back to Plaintiff, he told me 'don't hand that in.' Plaintiff felt intimidated that officials would retaliate, so I wrote directly to the NYS Commission about incident." *Id.* at 72. Saeli gave substantially similar responses to the same questions in the two earlier complaints.

After Defendants-Appellees were served and filed their answer, the case proceeded to discovery. As a part of their initial disclosures, Defendants-Appellees provided a copy of an informal grievance form filled out by Saeli, dated "09/25/16 1430," that describes the shower incident. *Id.* at 735. The form bore the number "2016-48631" in the upper right-hand corner. *Id.* Saeli's

handwritten description of the incident stated that he had not been "charged with a violation" of Jail rules, but Saeli also added an annotation in the margin: "This changed 9/26/16." *Id.*

After some discovery, Defendants-Appellees moved for summary judgment and for a stay of further discovery pending a decision on that motion. Saeli filed a memorandum of law in opposition to that motion, accompanied by an affidavit swearing to the factual assertions that the memorandum contained. For the first time in that sworn memorandum of law, and in contrast to the allegations in his complaint that he had been prevented from submitting an informal grievance form by the discouraging and intimidating acts of correction officers, Saeli repeatedly asserted that he did in fact submit a timely informal grievance form complaining of the shower incident. Specifically, he asserted that he "did submit his inmate grievance form concerning the September 24th 2016 [incident] to jail staff on September 25th 2016 at '1430,'" quoting directly from the copy of the form provided by Defendants-Appellees in their initial disclosures. *Id.* at 624; *compare id.* at 735. As evidence for that assertion, he cited the fact that the County had a copy of the form in its possession at the time of Defendants'-Appellees' initial disclosures.

14

On June 30, 2020, the district court granted summary judgment to Defendants-Appellees on all claims for failure to exhaust administrative remedies under the PLRA. The district court held that "the Defendants have satisfied their burden to show that a grievance process exists and applies to Saeli's claims," stating that "Chautauqua County Jail's grievance procedure is undisputed," and noting that "Saeli's extensive use of the process [in other instances not at issue] demonstrates his familiarity with it." *Saeli v. Chautauqua County*, No. 17-cv-6221, 2020 WL 3547049, at *3 (W.D.N.Y. June 30, 2020). The district court did not engage with Saeli's assertions in his summary judgment filings that he "submitted" an informal grievance form in some unspecified manner. Instead, it stated that there was "no record" of a filed grievance and that Saeli "admits" that he did not follow the grievance process. *Id.* at *4.

The district court then held that there was no genuine factual dispute as to whether the grievance process was in fact available to Saeli. With respect to the claims against the Officers, it characterized Saeli's reaction to the encounter with Fuller as a "general fear" of retaliation that could not excuse Saeli's failure to exhaust administrative remedies. *Id.* at *5. As for the claim against the County, the district court held that "Saeli's conclusory assertion that he was told the

15

handcuffing offense is not grievable, without further elaboration on the names or circumstances of the statement, is not sufficient" to create a genuine dispute of material fact as to the *de facto* availability of administrative remedies. *Id.* at *6. The district court also certified pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore denied Saeli leave to appeal *in forma pauperis*.

Saeli nevertheless appealed and moved in this Court to proceed *in forma pauperis*. A motions panel of this Court granted the motion to proceed *in forma pauperis* with respect to only one issue: "whether the administrative process was available for the Appellant to grieve the September 2016 incident." ECF No. 32 at 1. The motions panel further ordered that counsel be appointed for Saeli.

## DISCUSSION

We review a district court's decision to grant summary judgment *de novo*. *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020). Summary judgment is appropriate where, construing the record in the light most favorable to the nonmoving party, *id.*, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

The PLRA's exhaustion requirement provides that "[n]o action shall be

16

brought with respect to prison conditions under [42 U.S.C.] section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Because failure to exhaust is an affirmative defense, . . . defendants bear the initial burden of establishing, by pointing to 'legally sufficient source[s]' such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk County Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (internal citations omitted) (alteration in original).

Even where such a process theoretically exists and applies, however, the Supreme Court has recognized three situations in which an administrative remedy is *de facto* unavailable and, thus, exhaustion is not required: (1) where the process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the process is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). If the defendant has met its burden of

17

establishing the existence and applicability of the grievance policy, the *plaintiff* bears the burden of establishing *de facto* unavailability. *See Hubbs*, 788 F.3d at 59 ("If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact.").

In the present case, Saeli argues that the district court erred in granting summary judgment on both claims because (1) although the grievance policy applied to his claims against the Officers, the grievance process was not in fact available to him with respect to those claims, as he submitted an informal grievance form to an unspecified officer and the Jail did not provide him with the formal grievance form necessary to complete the next step of the process; and (2) the grievance policy did not apply to his claim against the County, and thus he had no administrative remedies to exhaust with respect to that claim. We conclude that the first argument lacks merit but that the second is correct.

## I.     Claims Against the Officers

Saeli concedes that the Jail's grievance policy exists, that it applied to his excessive force claims against the Officers, and that he did not complete all steps

required by that policy. Nevertheless, he argues that the district court erred in granting summary judgment to the Officers on exhaustion grounds because a genuine dispute of material fact existed as to whether he submitted a timely informal grievance form as required by that policy and the Jail simply failed to act on it, making his administrative remedies *de facto* unavailable.[4] We disagree. On the record before the district court, no reasonable factfinder could conclude that Saeli timely acted to comply with the grievance policy.

In order to comply with the grievance policy, Saeli was required to submit his informal grievance form soon enough after the shower incident to receive a response and obtain and file a formal grievance within five days of the incident – that is, by September 29, 2016 – for "it is the prison's requirements . . . that define the boundaries of proper exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007). At summary judgment, Defendants-Appellees relied on the declaration of Correction Officer Joseph Grupa, who stated that, "[a]fter a diligent search of

---

[4] Saeli does not challenge on appeal the district court's holding that Fuller's alleged instruction not to submit the grievance form did not render the grievance process unavailable to him and thus did not excuse any failure to exhaust his administrative remedies as to the claims against the Officers. He has therefore abandoned any argument that that holding constituted reversible error, and we have no occasion to address the issue.

19

Saeli's grievances, it is clear that he did not file a grievance relating to the September 24, 2016 incident," J. App'x at 346, to establish that Saeli had not exhausted the grievance procedures. Saeli points to two sources of evidence in the summary judgment record that he argues create a genuine factual issue about his effort to exhaust his administrative remedies: (1) the copy of the informal grievance form that the County had in its possession during initial disclosures and (2) his own sworn statements in his summary judgment filings. Even assuming that a reasonable factfinder could conclude from this evidence that he submitted an informal grievance form at some unspecified time, the evidence would not permit a reasonable factfinder to conclude, without relying on impermissible speculation, that he did so in a timely fashion as implicitly required by the grievance policy.

The informal grievance form standing alone cannot establish a genuine dispute of material fact as to whether Saeli submitted that form at all, much less in time to file a formal grievance by September 29, 2016. The form is dated "9/25/16 1430," *id.* at 735, but it includes information added by Saeli about the disciplinary hearing that occurred on September 26, 2016. The form therefore cannot possibly have been submitted to the Jail on the date given on the form,

20

absent some further explanation that Saeli makes no attempt to offer. Moreover, the form bears no markings indicating that it was ever received by a Jail officer, much less received by any specific date. The fact that the form was in the County's possession during initial disclosures similarly could not establish a genuine dispute without some additional evidence as to how and when the County obtained it, for "speculation alone is insufficient to defeat a motion for summary judgment." *McPherson v. New York City Dep't of Education*, 457 F.3d 211, 215 n.4 (2d Cir. 2006). In order to conclude that Saeli submitted the form to an officer before September 29, 2016, a factfinder would have to rely on additional inferences that the document itself does not support.

Saeli contends that the sworn factual assertions in his memorandum of law in opposition to summary judgment supply the additional context that a reasonable factfinder would need to conclude that he submitted a timely informal grievance form, but that evidence is equally unsupportive. To the extent that the sworn memorandum alleges that Saeli submitted his informal grievance form on a specific date, his account is so implausible and internally contradictory that no reasonable factfinder could accept it as true. Saeli specifically asserted that he "did submit his [informal] inmate grievance form concerning the

September 24th 2016 [incident] to jail staff on September 25th 2016 at '1430,'" referring to the copy of the form that the County provided in initial disclosures, which Saeli attached as an exhibit to his opposition. J. App'x at 624; *compare id.* at 735. As noted above, that is impossible, because the form included information about events that had not yet occurred by that date and time. And in the immediately preceding sentence of the memorandum, Saeli stated that the "Correction Officer" whom the inmate asks for an informal grievance form "fills in . . . the date and time the grievance was *given* to the inmate," *id.* at 624 (emphasis added), further undermining the evidentiary force of the date on the document.

Saeli nevertheless argues on appeal that even if he could not have submitted the informal grievance form by September 25, 2016 as he stated in the sworn memorandum, the more general allegation in that memorandum that he submitted the form on some unspecified date should suffice to defeat summary judgment. He suggests that he had likely forgotten the precise date on which he submitted the informal grievance form by the time he was writing his summary judgment papers and assumed that he must have done so on the date marked on the form, failing to notice that the form included information about events that

occurred after that date. Even assuming that Saeli could convince a reasonable factfinder of that account, he would still need to point to some additional evidence that he actually submitted the informal grievance form no later than September 29, 2016.

But there is no such evidence. The statement in Saeli's summary judgment memorandum that he submitted the form to an unidentified officer at an unspecified time – assuming it references a different submission than the one that the same memorandum asserts occurred on the date that appears on the form – does not purport to provide the timing of the submission. Moreover, Saeli's own explanation in the briefing hypothesizes that he adopted the September 25 date on the form because he had forgotten when he submitted the form, and suggests no specific alternative date. In short, the assertion that Saeli submitted the form in a timely manner rests entirely on speculation based on the face of the document, which, as discussed, is inherently inaccurate.[5]

---

[5] We note that this entire discussion assumes *arguendo* that the statement in the summary judgment memorandum is sufficient to create a factual dispute about whether Saeli *ever* submitted the form, in the face of the earlier statements in all three complaints indicating that he had not, based largely on an inference from the fact that the document arrived in the County's possession from the Jail, rather than the Commission, to which Saeli may have sent it.

A party seeking to defeat summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To conclude that Saeli submitted an informal grievance form in a timely fashion simply from his general allegation that he submitted that form at some point would require the factfinder to "rely on . . . unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). Without some further "hard evidence" – even in the form of his own testimony from personal knowledge – "showing that [his] version of events is not wholly fanciful," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), Saeli cannot establish a *genuine* dispute as to whether he submitted an informal grievance form before September 29, 2016.[6]

---

[6] To be clear: If Saeli asserted that he fully exhausted his administrative remedies, he would not bear the ultimate burden of proving at trial that he complied with all the steps laid out in the grievance policy, including by filing the informal grievance form. Nonexhaustion, as noted above, is an affirmative defense. But Saeli concedes that he did not exhaust his remedies by completing all of the steps in the grievance process. His argument is one about *de facto* unavailability – that he made an *attempt* at compliance with the grievance procedures, only to be thwarted by Jail personnel – an argument for which the plaintiff bears the burden of proof. *See Hubbs*, 788 F.3d at 59. In any event, regardless of which party bears the burden of proof at trial regarding the claims or defenses at issue, where the moving party adduces some evidence based on

Moreover, Saeli's account that he submitted the informal grievance form to a correction officer, whether on September 25, 2016 or some later date, is inconsistent with his statements in the operative complaint, in which he repeatedly asserted that he filled out the form and attempted to give it to Lieutenant Fuller, who returned it to him and instructed him not to "hand that

which a reasonable factfinder could accept its account, Rule 56 requires the nonmoving party either to point to some evidence based on which a reasonable factfinder could instead accept its account or to explain why the moving party's admissible evidence, even if believed, could not place the material issue in question beyond genuine dispute. *See* Fed. R. Civ. P. 56(c)(1). Defendants-Appellees pointed in their summary judgment materials to Officer Grupa's testimony stating that a diligent search of the Jail's grievance records disclosed no filed grievance forms related to the shower incident. Saeli failed to respond with any competent evidence – even in the form of his own testimony – that he indeed submitted an informal grievance form within the prescribed time limit. His only response was that the County's eventual possession of the informal grievance form, coupled with his various assertions that he submitted the form either (implausibly) on September 25, 2016 or on some subsequent (unspecified) date would somehow allow a factfinder to conclude that he timely completed the first two steps of the grievance procedure, and was thwarted by the Jail's failure to provide him with the formal grievance form necessary to complete the third step in a timely manner.

Moreover, we do not mean to suggest that, in every case, a PLRA plaintiff must recall the exact date upon which he submitted a grievance form as a prerequisite to creating a genuine dispute of material fact as to whether he attempted to exhaust administrative remedies. The present case is an unusual one, in which the plaintiff offered only a specific date on which he could not possibly have submitted the form, and to the extent that he testified more broadly to having submitted the form, did not specify even a general time frame for that submission.

in." J. App'x at 72. In that complaint, as in the two others that preceded it, Saeli asserted that he was intimidated by Fuller's manner and chose to write to the Commission of Correction rather than risk retaliation for any further effort to submit the form. He gave the same account in sworn testimony in a related state proceeding, where he similarly explained that after Fuller instructed him not to hand in the form, not wanting to be "retaliated against or anything," he "took it back, and [] wrote a letter to the New York State Commissions of Corrections [*sic*] about the incident." *Id.* at 753.

We are, of course, cognizant that courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments. *See, e.g.*, *Green v. Town of East Haven*, 952 F.3d 394, 406 (2d Cir. 2020). Accordingly, we do not undertake to assess Saeli's credibility, or to weigh his testimony against the evidence offered by Defendants-Appellees. We are also cognizant, however, of the rule that to defeat summary judgment, "there must be evidence on which the jury could *reasonably* find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (emphasis added). Moreover, we are not required to assume the truth of testimony "so replete with inconsistencies and improbabilities that a reasonable jury could not [base a

favorable finding on it]." *Jeffreys v. City of New York*, 426 F.3d 549, 553–55 (2d Cir. 2005). Here, Saeli's testimony that he submitted the informal grievance form on September 25, 2016 is, as he now concedes, incompatible with the information on that document. Neither the document itself nor Saeli's general statements that he at some point submitted it – which is inconsistent with his earlier assertions that he was intimidated into *not* submitting it – could permit a reasonable jury to find that he completed the initial steps of the grievance process in a timely manner.[7]

The district court therefore did not err in granting summary judgment on the question of exhaustion with respect to the individual claims against the Officers.

## II.   Claim Against the County

Saeli argues that the district court erred in granting summary judgment to

---

[7] Because we conclude that the Officers were entitled to summary judgment even if Saeli's sworn memorandum in opposition is taken into account, we need not address their argument that Saeli's summary judgment "affidavit" should be discounted under the "sham affidavit" rule because it purportedly contradicts his sworn testimony in a separate proceeding. *Compare Reese v. Herbert*, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008) ("[W]e would be reluctant to disregard an affidavit of a witness, whether or not a party in the case, on the ground that it is inconsistent with testimony the witness gave in another proceeding.") *with Essick v. Yellow Freight Systems, Inc.*, 965 F.2d 334, 335 (7th Cir. 1992) (applying sham affidavit rule where testimony was given in separate proceeding).

the County on exhaustion grounds because Defendants-Appellees have failed as a matter of law to meet their burden of establishing that the grievance policy applied to that claim. We agree.

As an initial matter, we reject Defendants'-Appellees' contention that Saeli has waived any argument related to the grievability of the handcuffing claim by failing to raise the issue sufficiently below. While "it is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal," *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994), it is likewise "well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks, citation, and emphasis omitted). Saeli, who proceeded *pro se* below, alleged in his operative complaint that an officer told him "that the method and policy of handcuffing Plaintiff and others is outside the control of the jail and thus not grievable." J. App'x at 62. We easily construe that allegation to imply that Saeli assumed the officer's statement was accurate and believed the handcuffing policy to be nongrievable. Although Saeli did not reiterate that position in his opposition to the motion for summary judgment, Defendants-Appellees, who

bore the burden of demonstrating that a grievance policy existed and applied to Saeli's claims, argued that the grievance policy applied to the handcuffing claim against the County only in a footnote in their summary judgment brief, without acknowledging the language in the grievance policy about matters outside the jail captain's control. It would be inequitable to hold that a *pro se* litigant forfeited any challenge to an argument by failing to reiterate, in response to a footnote, a point made in earlier pleadings, especially where, as discussed below, the text of the grievance policy itself demonstrates that what Saeli was told was actually correct. Accordingly, we reject Defendants'-Appellees' waiver argument and proceed to the merits of Saeli's nongrievability argument.

With respect to his claim against the County, Saeli does not argue that an applicable grievance policy was unavailable to him merely because he relied on a correction officer's statement that the claim was not grievable; rather, he argues that there was no grievance policy applicable to that claim in the first instance. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law." *Snider v. Melindez*, 199 F.3d 108, 113-14

29

(2d Cir. 1999) (footnote omitted). For that reason, Saeli's argument does not turn on whatever a correction officer may have told him regarding the grievability of the handcuffing policy after the September 12, 2016 handcuffing incident.[8] We must look to the grievance policy itself to determine whether it applied to Saeli's claim against the County.

The text of the grievance policy expressly excludes certain types of claims from the grievance procedures. One such excluded category is "issues that are outside the authority of the jail captain to control." J. App'x at 385. Thus, if the jail captain did not have the authority to change the handcuffing policy – the sole subject of the claim against the County – then that claim was not grievable.[9]

---

[8] The case on which Defendants-Appellees principally rely – *Bennett v. James*, 737 F. Supp. 2d 219 (S.D.N.Y. 2010) – is therefore inapposite. In that case, there was no dispute that the jail's grievance policy applied to the plaintiff's claims as a matter of law; the plaintiff simply alleged, *inter alia*, that an unnamed officer "told" him that his claims were nongrievable. *Id.* at 226-27. The court determined that the plaintiff's allegation was "conclusory" and therefore held that it could not establish a genuine dispute of material fact as to the *de facto* unavailability of administrative remedies. *Id.* But Saeli does not argue that he was deterred from filing a grievance because he was misled by a correction officer's inaccurate advice. He contends that the correction officer was right, based on the plain meaning of the grievance policy.

[9] We reject Defendants'-Appellees' argument that the grievance policy merely provides that the excluded issues "'may not be _appealed_ to the jail captain,' not that an inmate is immune from filing an informal or formal grievance [regarding

Policy documents that Defendants-Appellees introduced into the record below make clear that it was the Sheriff's Department, not the Jail, that set the handcuffing policy, and that the jail captain was subject to that policy. In particular, a June 8, 2009 order of then-Sheriff Joseph A. Gerace set out the applicable handcuffing policies and expressly provided that those policies bound the captain and other Jail personnel. Defendants-Appellees do not dispute that the Sheriff's order and similar documents that they introduced into the summary judgment record accurately reflect the handcuffing policies in place at the time and the authority under which those policies were promulgated. To the contrary, they described the documents in question in their summary judgment papers as "true and accurate copies of relevant Chautauqua County handcuffing policies that were in effect on September 24, 2016," *id.* at 240.[10]

---

such issues] in the first instance." Appellees' Br. at 42-43, quoting J. App'x at 385 (double emphasis in original). That argument ignores the portion of the preceding sentence in the grievance policy stating that the excluded issues "are not grievable issues." J. App'x at 385.

[10] We reject the County's attempt to recast Saeli's *Monell* claim as a challenge to the Officers' *deviation from* the County handcuffing policy or a challenge to a non-existent *"new"* policy, rather than the existing County policy. Saeli has consistently stated that the County maintained a policy requiring that inmates be handcuffed with their hands in a backwards position, and that the Officers placed his hands in that position during the September 24 incident. Whether or

It appears, then, that the handcuffing policy was outside the jail captain's control and thus, as a matter of law, outside the scope of the grievance policy. Defendants-Appellees offer no explanation whatsoever as to how, in light of the authority under which the handcuffing policy was undisputedly issued, it could have been a matter *within* the jail captain's control. They have therefore failed to meet their burden of establishing that the grievance policy applied to the handcuffing claim against the County.

Defendants-Appellees nevertheless argue that even if the handcuffing policy was not independently grievable, Saeli's exhaustion of his claim against the County necessarily rises and falls with that of his claims against the Officers. Specifically, Defendants-Appellees contend that although the handcuffing claim alleges injury resulting from an official policy or custom as required for § 1983 suits against municipalities under *Monell*, it is not truly an independent claim, because it and the claims against the Officers arose from a "single incident." Appellees' Br. at 38. Defendants-Appellees observe that this Court's order

_____

not Saeli ultimately establishes these facts to support the merits of his *Monell* claim, the "underlying dispute" here involves a challenge to a purported County policy. *Hubbs*, 788 F.3d at 59. We therefore must determine whether the grievance policy applies to that dispute.

allowing Saeli to proceed *in forma pauperis* limited his appeal to the "September 2016 incident," ECF No. 32 at 1, and contend that the singular "incident" most likely refers to the September 24, 2016 shower incident, thus foreclosing any reliance by Saeli on the September 12, 2016 handcuffing incident. But even though the September 12 incident is no longer a part of this case, their argument is unavailing because it relies on misconceptions of what the PLRA requires.

Courts evaluating nonexhaustion defenses under the PLRA must do so on a claim-by-claim basis and may not dismiss the entire action because some, but not all, claims are unexhausted. *See Jones*, 549 U.S. at 219-24; *Ortiz v. McBride*, 380 F.3d 649, 655-63 (2d Cir. 2004). As the Supreme Court has explained, that rule is in line with a general principle that courts follow in applying other procedural limitations on bringing claims, such as statutes of limitations: "[I]f a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Jones*, 549 U.S. at 220-21. Moreover, evaluating exhaustion on an entire-action basis might incentivize "inmates [to] file various claims in separate suits, to avoid the possibility of an unexhausted claim tainting the others," an outcome that "would certainly not comport with the purpose of the PLRA to reduce the quantity of inmate suits." *Id.* at 223.

33

It follows that courts must ask with respect to *each claim* that an inmate brings whether "a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59. As in any area of the law, multiple "underlying dispute[s]," *id.*, may well arise from a single incident. In the PLRA context, a single encounter with a correction officer may result in claims of multiple constitutional violations, or even claims that multiple aspects of the officer's conduct violated the same constitutional right several times over. That a grievance policy applied to one of those claims does not make the administrative process any more "available" to the inmate with respect to other claims that the grievance policy excludes.

The authority that the County cites is not to the contrary. In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court held that the unavailability of a particular type of *relief* – specifically, money damages – through the grievance process does not make that process inapplicable to a claim seeking such relief where the process allows for "the possibility of some relief for the action complained of." *Id.* at 738-41. The thrust of *Booth* is that it is the substance of the underlying claim, not the relief sought, that makes a claim grievable, and thus an administrative process "available," within the meaning of the PLRA.

The type of relief sought is not at issue in the present case. Saeli separately challenges (1) the Officers' use of physical force to extract him from the shower and subject him to handcuffing; and (2) the manner in which the handcuffs were affixed, which he contends caused him distinct pain and different injuries. The latter was beyond the power of the jail captain to remedy or alter, since it was dictated by the Sheriff's policies.

The mere fact that a *Monell* claim and a claim against an individual officer relate to the same incident does not render those claims identical in substance. It is true that a plaintiff who brings a *Monell* claim against a county must demonstrate that the county "had (1) an official policy or custom that (2) cause[d] [him] to be subjected to (3) a denial of a constitutional right." *Torcivia v. Suffolk County*, 17 F.4th 342, 355 (2021), quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted) (alterations in original); *see also Anilao v. Spota*, 27 F.4th 855, 873-74 (2d Cir. 2022) (same). It is also a necessary corollary that such a suit *involves* conduct by officers in accordance with said policy or custom. But it does not follow that where a § 1983 plaintiff brings both a *Monell* claim against a municipality and individual claims against that municipality's officers, the underlying substance of those claims will be identical,

35

even if the claims involve some degree of factual overlap.

Here, the fact that Saeli's claim against the County is a *Monell* claim *related* to the Officers' individual conduct does not mean that it is a mere *repackaging* of the individual claims, identical but for the name on the other side of the "v." Rather, the substance underlying Saeli's claim against the County is confined narrowly to the handcuffing policy, while the individual claims assert a broader theory of excessive force: that Genther "violently and unnecessarily forced [Saeli] to the ground," after which both Officers "knelt on [Saeli's] back and spine with all their weight" and handcuffed him in accordance with the County's policy. J. App'x at 64. In addition to the nerve damage in his wrists that Saeli attributes to the handcuffing, he alleges that the Officers' use of force, separate from the manner in which the handcuffs were affixed, caused "injuries to his back [and] shoulders." *Id.* at 65. The claim against the County solely involves subject matter that, as explained above, is outside the jail captain's control and thus nongrievable.[11] In contrast, the excessive force claims against the Officers are

---

[11] That the claim against the County is predicated on the conduct of the two Officers does not affect the analysis. While the Officers may be under the command of the jail captain, it remains the case that the conduct objected to – the way in which the handcuffs were affixed – is beyond the ability of the jail captain to control, alter, or remedy, since the captain, like the Officers, is bound by the

based on distinct uses of force that we have no reason to doubt the jail captain could prohibit or discipline. For that reason, we reject Defendants'-Appellees' argument that Saeli's exhaustion of the former rises and falls with that of the latter.

Defendants-Appellees argue that, even if Saeli's handcuffing claim against the County fell outside the grievance policy, precluding summary judgment on the basis of non-exhaustion, we nevertheless should affirm because the claim lacks merit. It is possible that Saeli has failed to present sufficient evidence to permit a reasonable factfinder to conclude that the County's handcuffing policy violated his constitutional rights. But while "[i]t is well settled that we may affirm [a district court's decision] on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court," we have "discretion to choose not to do so based on prudential factors and concerns." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 157-58 (2d Cir. 2015) (internal quotation marks and citations omitted). In the present case, this Court limited Saeli's appeal to the exhaustion question. It would be unfair to affirm on a ground that we instructed him not to address on

Sheriff's policy.

appeal. We therefore decline to decide whether Saeli's *Monell* claim fails, at the summary judgment stage, on the merits. That question remains to be decided by the district court on remand. That said, because we hold that Saeli may not press his unexhausted excessive-force claims against the individual Officers and may challenge only the *handcuffing policy*, which is beyond the authority of the jail captain to control, he may recover only to the extent that he demonstrates at trial that the handcuffing policy itself, rather than an improper or excessively rough implementation of it by the Officers, unlawfully caused his injuries.

In sum, the district court erred as a matter of law in holding that Saeli was required to grieve his handcuffing claim against the County through the Jail's grievance procedure. Because no extant grievance policy applied to that claim, the County lacks a valid PLRA nonexhaustion defense.

## CONCLUSION

For the foregoing reasons, we hold that the district court did not err in granting summary judgment on exhaustion grounds with regard to Saeli's claims against the Officers, but that it did err in doing so with regard to his claim against the County. Accordingly, we AFFIRM the judgment of the district court as to the Officers, VACATE the judgment as to the County, and REMAND for further proceedings consistent with this Opinion.