*Coley v. Garland*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of March, two thousand twenty-four.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
>  *Circuit Judges*.

_____

KHARI DEVON COLEY,

>  *Plaintiff-Appellant*,

>  v.                                                                                     No. 23-295

CORRECTIONAL OFFICER WAYNE L. GARLAND, CORRECTIONAL OFFICER JOSEPH R. GRANGER, CORRECTIONAL OFFICER RANDY J. RUSSELL, SERGEANT WILLIAM HOFFNAGLE, CORRECTIONAL OFFICER NATHAN T. LOCKE,

>  *Defendants-Appellees*.[*]

_____
_____

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| For Plaintiff-Appellant: | Khari Devon Coley, *pro se*, Comstock, NY. |
|---|---|
| For Defendants-Appellees: | Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, Joseph M. Spadola, Assistant Solicitor General, *for* Letitia James, Attorney General of the State of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 20, 2023 judgment of the district court is **AFFIRMED**.

Khari Devon Coley, who is incarcerated and proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of Wayne L. Garland, Joseph R. Granger, Randy J. Russell, William Hoffnagle, and Nathan T. Locke (collectively, "Defendants") on Coley's claims under 42 U.S.C. § 1983. Coley alleged that Defendants – all of whom are corrections officers at Upstate Correctional Facility ("Upstate") in New York – assaulted him in his cell in October 2016, leading to substantial physical injuries for which Coley now seeks damages. The district court granted summary judgment to Defendants because Coley failed to offer sufficient evidence that he had exhausted his administrative remedies

2

before filing suit, as is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The district court additionally found that Coley could not establish that administrative remedies were not available to him. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Although "a district court may not discredit a witness's deposition testimony on a motion for summary judgment, . . . there is an exception for 'the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete.'" *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). Under this exception, "we are not required to assume the truth of testimony so replete

3

with inconsistencies and improbabilities that a reasonable jury could not base a favorable finding on it." *Saeli v. Chatauqua County*, 36 F.4th 445, 457 (2d Cir. 2022) (alterations and internal quotation marks omitted) (applying this rule to grant summary judgment against a *pro se* inmate on exhaustion); *see also Jeffreys*, 426 F.3d at 555 ("[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations . . . and dismiss the claim." (quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, *J.*) (alteration omitted))).

Under the PLRA, inmates must exhaust all available administrative remedies before bringing suit over mistreatment by corrections officers. *See Jones v. Bock*, 549 U.S. 199, 204 (citing 42 U.S.C. § 1997e(a)). To that end, inmates must comply with all "prison grievance procedures" in place, *id.* at 218, including exhausting any right to appeal, *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009). Exhaustion is ultimately a question of law, which a district court may resolve at summary judgment when there is no genuine dispute that an inmate-plaintiff failed to pursue available administrative remedies. *See Hubbs v. Suffolk Cnty. Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015). "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing . . . that a

4

grievance process exists and applies to the underlying dispute." *Saeli*, 36 F.4th at 453 (alterations and internal quotation marks omitted). "If the defendant has met its burden of establishing the existence and applicability of the grievance policy, the plaintiff bears the burden of establishing" that the grievance process was rendered "unavailable as a matter of fact." *Id.* (emphasis and internal quotation marks omitted). For instance, a plaintiff can make that showing of unavailability – and excuse his failure to exhaust – by establishing that the grievance process was too "opaque" to navigate or that "prison officers thwart[ed]" inmates' attempts to use it. *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)).

Here, the district court granted summary judgment on the ground that Coley failed to exhaust. We agree. To begin, Defendants met their initial burden of establishing that Upstate had an applicable grievance policy, which they did by demonstrating that New York "has a well-established three-step" process through which inmates can file complaints and appeals. Dist. Ct. Doc. No 93-8 at 10–11 (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2024) ("Inmate Grievance Program")). As to Coley specifically, Defendants also established that he had not fully exhausted his claims through the three-step process, given that neither

Upstate nor the central grievance committee had any record of Coley filing a timely grievance (or appeal) over the October 2016 incident.

This shifted the burden to Coley to show that the grievance process was "not in fact available to him." *Saeli*, 36 F.4th at 453. Coley insists just that, claiming that "correctional officers intentionally discarded the grievance" he tried to submit over the October 2016 incident. Coley Br. at 8. But Coley's account of this supposed interference is far too "implausible and internally contradictory" for us to credit it. *Saeli*, 36 F.4th at 454.

First off, Coley did not assert that he filed the grievance himself but instead that another inmate wrote and mailed it on his behalf. At Coley's deposition, he recounted how he spoke to "Reggie" through a hospital cell door, who then wrote the grievance with a pencil and paper. Dist. Ct. Doc. No. 93-2 ("Coley Dep.") at 94. Coley was then asked whether he signed the grievance. At first, Coley proclaimed that there "no way for [him] to sign it" so he had to sign it "later." *Id.* at 96. But then Coley appeared to shift his story, claiming that he *did* sign the grievance – by reaching through the cell door to Reggie – with a "piece of a pencil" that he had concealed from the officer on duty. *Id.* Arguably, Coley's equivocation could be attributed to the spotty connection during his remote

6

deposition, which broke up in between these conflicting statements. But even that would not reconcile his ultimate testimony – that he signed a grievance with a hidden piece of pencil – with his Rule 56.1 statement, in which Coley stated that "he did not have . . . [a] pencil" to write the grievance. Dist. Ct. Doc. No. 100 at 2–3 ¶ 24. Moreover, it would beg the question of how Coley was able to use a contraband pencil while he was on "one-on-one [suicide] watch." *Id.* at 97; *see also id.* at 93 (stating that the officer was "right there" during the Reggie conversation). When pressed on this, Coley pivoted and asserted that the officer on duty "walked away" when he signed the paper. *Id.* at 97.

More problematically, this narrative still would not show that officers *prevented* this particular grievance from being filed. Indeed, Coley offers only "unsubstantiated speculation" that officers threw away the grievance after Reggie mailed it, without offering any details or "hard evidence" as to how that might have occurred. *Saeli*, 36 F.4th at 455. To be sure, Coley asserted in his deposition that Officer Garland had intercepted Coley's grievances in the past, apparently because Garland was targeting Coley. But Garland's targeting of Coley would not explain how Garland intercepted a grievance filed by someone else – Reggie – especially when nothing suggests that Garland was aware that Coley had spoken

to Reggie, much less asked him to write a grievance.  "[W]e are not required to assume the truth of testimony so replete with inconsistencies and improbabilities that a reasonable jury could not base a favorable finding on it."  *Saeli*, 36 F.4th at 457 (alterations and internal quotation marks omitted).

Finally, we reject Coley's contention that he was entitled to a pretrial evidentiary hearing on the exhaustion issue.  We review a district court's decision to deny an evidentiary hearing for abuse of discretion.  *See Kolel Beth Yechiel of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013).  In general, district courts need not grant evidentiary hearings based on "uncorroborated averments" and "conclusory allegations."  *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  Because that is all Coley offered below, the district court acted well within its discretion in declining to hold such a hearing.

We have considered Coley's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8