**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: October 7, 2015          Decided: March 8, 2016)

Docket Nos. 14-2475-cv (Lead) 14-2512-cv (XAP)

_____

Axel Rentas,

*Plaintiff-Appellant–Cross-Appellee*,

v.

Captain John Ruffin,

*Defendant-Appellee–Cross-Appellant*,

The City of New York, Correction Officer Diana Baker, Correction Officer Kevin Parker, Correction Officer Mills Charles, Deputy Warden Elisio Perez, Captain Sharon Clayton, Captain Darryll Lago, Correction Officer George Ruppel, Deputy Warden Walter Nin,

*Defendants-Appellees*,

Correction Officer Richard Serrano, Correction Officers John Doe, #1-10,

*Defendants*.[*]

_____

[*] The Clerk of the Court is respectfully directed to amend the official caption as set forth above.

1

Before:       PARKER, LOHIER, and CARNEY, *Circuit Judges*.

Axel Rentas appeals, and Captain John Ruffin cross-appeals, from a judgment of the District Court for the Southern District of New York (Hellerstein, *J.*).  Rentas, a former inmate on Rikers Island, claimed that the Rikers staff used excessive force against him and then fabricated evidence, leading to his prosecution and prolonged detention.  The District Court granted the defendants summary judgment on Rentas's malicious prosecution claim, but allowed his fair trial, excessive force, and intentional infliction of emotional distress claims to proceed to trial.  The jury found the defendants liable for intentional infliction of emotional distress and Captain Ruffin individually liable for violating Rentas's right to a fair trial and for using excessive force.  On appeal, Rentas challenges the grant of summary judgment on his malicious prosecution claim and argues that the District Court erred at trial when it excluded certain allegedly false reports prepared by the defendants.  On cross-appeal, Captain Ruffin argues that he was entitled to judgment as a matter of law on Rentas's claim of intentional infliction of emotional distress.  We **AFFIRM** in part (as to the claim of intentional infliction of emotional distress), **VACATE** in part (as to the malicious prosecution, fair trial, and excessive force claims), and **REMAND** for further proceedings consistent with this opinion.

JOSHUA P. FITCH, Cohen & Fitch LLP, New York, NY, *for Plaintiff-Appellant– Cross-Appellee*.

ELIZABETH S. NATRELLA (Pamela Seider Dolgow, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee–Cross-Appellant and Defendants-Appellees*.

LOHIER, *Circuit Judge*:

Axel Rentas appeals, and Captain John Ruffin cross-appeals, from a

judgment of the United States District Court for the Southern District of New

York (Hellerstein, <u>J</u>.).  Rentas, a former inmate on Rikers Island, sued several

correction officers and prison officials along with the City of New York, claiming that the officers used excessive force against him and then fabricated evidence, leading to his prosecution and prolonged detention. Because we conclude that the District Court committed a significant evidentiary error by excluding certain reports prepared by the officers, we **VACATE** in part and **REMAND** for further proceedings consistent with this opinion. As for Captain Ruffin's cross-appeal, in which he argues that he was entitled to judgment as a matter of law on Rentas's claim for intentional infliction of emotional distress, we **AFFIRM**.

## BACKGROUND

This case arises from a July 12, 2007 altercation between Rentas, then an inmate on Rikers Island, and several members of the correctional staff. Rentas was serving a misdemeanor sentence and was scheduled to be released in less than three weeks. Correction Officer Kevin Parker ordered Rentas to move to a new bed, but Rentas refused, asking to speak with Parker's supervisor. A fight started when Officer Parker attempted to move Rentas's belongings from near his bed. Another officer called for backup. The fight escalated when Captain Ruffin and other correctional staff arrived.

The officers eventually subdued Rentas, handcuffed him, and carried him away.

The parties disagree about who initiated the fight, the degree to which Rentas resisted, and whether he was injured before or after the Rikers staff placed him in handcuffs. According to Rentas, Officer Parker grabbed him when he refused to change beds and then fell on purpose, feigning injury. When Captain Ruffin arrived, he immediately placed Rentas in handcuffs. Rentas claims that Captain Ruffin and other correction officers then proceeded to punch, kick, and pepper spray him while he was handcuffed. As they carried him away, they purposefully dropped him on his face. And after arriving at intake, Deputy Wardens Walter Nin and Elisio Perez allegedly joined in, beating Rentas while he remained in handcuffs. Rentas suffered a fractured eye socket, bruises and abrasions all over his body, and bleeding in his lungs. Several of the correction officers involved in the incident also complained of injuries and received medical treatment. Later that month, Rentas filed a notice of claim with the City alleging it was responsible for violations of his civil rights and related claims.

As part of an internal New York City Department of Corrections investigation into the incident, several of the correctional staff — Captains Ruffin, Darryll Lago, and Sharon Clayton, and Officers Diana Baker, Kevin Parker, and George Ruppel — prepared reports of the incident, which were ultimately transmitted to an Assistant District Attorney in Bronx County. Shortly thereafter, Rentas was charged in Bronx County Criminal Court with multiple counts of felony assault and detained for three years before being acquitted at trial.

After his acquittal, Rentas sued the correctional staff involved in the July 2007 altercation, along with the City of New York, claiming the defendants were liable for the use of excessive force, assault and battery, malicious prosecution, the denial of his right to a fair trial, intentional infliction of emotional distress ("IIED"), and the failure to intercede to protect him from the violation of his constitutional rights. On summary judgment, Rentas claimed that the reports prepared by the correctional staff were false and had prompted the prosecution. The District Court dismissed Rentas's malicious prosecution claim, reasoning that the Bronx County "prosecutors [had] exercised an independent decision to prosecute based on . . . evidence of

5

the officers' injuries and the statements of other inmates who claimed that [Rentas] started the altercation." It refused to dismiss Rentas's IIED claim, however, explaining that his notice of claim satisfied the requirements of New York's General Municipal Law. The parties proceeded to trial on all of the remaining claims. At trial, Rentas sought to admit the officers' use-of-force reports and other documents that the defendants prepared and later provided to the Bronx District Attorney's office. Although the District Court admitted several of the reports, it excluded five of them as inadmissible hearsay. During a jury charge conference, Rentas objected to the District Court's proposed instruction to the jury that it could award Rentas nominal damages for his fair trial and excessive force claims; he also challenged the District Court's refusal to instruct the jury on assault and battery under New York State law in connection with the excessive force claim.

The jury found Captain Ruffin individually liable for denying Rentas's right to a fair trial, subjecting him to excessive force, and failing to intercede, and all the defendants liable for IIED. It awarded Rentas $67,500 in compensatory damages for the IIED claim, but only nominal damages for the fair trial, excessive force, and failure to intercede claims.

6

This appeal followed.

**DISCUSSION**

On appeal, Rentas argues that the District Court erred by dismissing his malicious prosecution claim on summary judgment and excluding the officers' reports from evidence. We agree and therefore vacate in part the District Court's judgment and remand for a new trial on the malicious prosecution, excessive force, failure to intercede, and fair trial claims. Captain Ruffin cross-appeals, arguing that he was entitled to judgment as a matter of law on Rentas's IIED claim. We are not persuaded, however, that the jury's verdict on the IIED claim should be disturbed and therefore affirm the District Court's judgment as to that claim.

1. Malicious Prosecution

We turn first to the District Court's dismissal of Rentas's malicious prosecution claim. We review the District Court's grant of summary judgment de novo, construing all evidence in the light most favorable to the non-moving party. Ruggiero v. County of Orange, 467 F.3d 170, 173 (2d Cir. 2006). Summary judgment should be affirmed only when there is no genuine

7

dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In order to prevail on his malicious prosecution claim, Rentas was required to show the following: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[] (4) the matter terminated in plaintiff's favor." Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)). Here, the defendants initiated a prosecution against Rentas and the matter terminated in his favor.

But the District Court concluded that Rentas could not prove the second element of the claim — namely, the absence of probable cause — and granted summary judgment on that basis. In arriving at that conclusion, the court relied on evidence that the Bronx District Attorney made a subsequent, independent decision to prosecute Rentas that was supported by probable cause and untainted by the officers' allegedly false reports. "[A] grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution . . . thereby is defeated." McClellan v. Smith, 439

8

F.3d 137, 145 (2d Cir. 2006). "[T]he presumption may be rebutted by evidence of . . . wrongful acts on the part of police," including "fraud, perjury, [or] the suppression of evidence." Id. (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)). For example, when an "officer provide[s] false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the . . . officer's initial, potentially tortious behavior." Cameron, 598 F.3d at 63. But if the prosecution relied on independent, untainted information to establish probable cause, a complaining official will not be responsible for the prosecution that follows. See Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999). In that situation, "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration [would be] broken by the intervening exercise of [the prosecutor's] independent judgment." Id.

In this case, Captain Ruffin argues that probable cause arose from independent, untainted information in the form of testimony of other Rikers inmates. As part of its investigation, the Department of Corrections interviewed and obtained statements from inmates who witnessed the altercation. Although the defendants suggest that these statements were

9

themselves included in the package of documents provided to the District Attorney's office, our review of the record on summary judgment leads us to conclude that the statements were merely quoted in an investigation report prepared by one of the defendants. According to that report, one inmate allegedly said that he "saw a fellow inmate and [Officer] Parker fighting because [Officer] Baker told him to move to the front. He did not listen so [Officer] Parker moved his stuff[,] and the inmate hit him with a punch." Joint App'x 317. A second inmate was reported to have stated that he "saw the inmate throw many punches at [O]fficer Parker. The inmate assaulted [O]fficer Parker." Id. It is not clear to us that these statements constitute independent, untainted information upon which a prosecution may rely to break the chain of causation if they are contained in one of the allegedly false reports prepared and supplied by the defendants. Our doubts are reinforced by the eventual trial testimony of the Assistant District Attorney who drafted the criminal complaint against Rentas, which suggests that she did not rely directly on the statements of inmates before seeking to indict Rentas. The District Court therefore erred in concluding, based on the summary judgment

record before it, that the inmates' statements provided an independent basis for probable cause separate from the allegedly false reports.

In dismissing the malicious prosecution claim, the District Court also faulted Rentas for failing to produce independent evidence that the defendants lied to prosecutors and for relying instead on his own deposition testimony to contradict the defendants' version of events. This was also error. At summary judgment, Rentas was entitled to rely on his own testimony to establish his malicious prosecution claim. See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) ("[D]istrict courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." (quotation marks omitted)). In any event, Rentas did offer evidence beyond his own testimony, including photographs of his injuries following the incident, which did not appear to show any bruises or abrasions on his hands despite the defendants' claims that he repeatedly punched members of the staff so violently that they required immediate medical treatment. See Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003) (reversing summary judgment where the plaintiff offered a competing account of the facts supported by only a single document).

11

Lastly, Captain Ruffin argues that the District Court properly dismissed the malicious prosecution claim because evidence of actual malice was lacking. But actual malice can be inferred when a plaintiff is prosecuted without probable cause. Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010); Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003) ("A lack of probable cause generally creates an inference of malice."). According to Rentas's sworn testimony, the defendants attacked him and later conspired to hide the assault by initiating a prosecution without probable cause that extended his remaining time in prison from three weeks to three years. A reasonable jury could infer that the defendants acted with actual malice based on these facts, thus precluding summary judgment. For these reasons, we vacate the District Court's dismissal of the malicious prosecution claim and remand for further proceedings.

2. The Defendants' Reports

Rentas also argues that the District Court should not have excluded the defendants' incident reports and supporting documentation as hearsay at trial on the remaining claims. On appeal, the defendants do not defend the District Court's assertion that the reports were inadmissible hearsay. Nor

could they, since Rentas did not offer the reports to prove the truth of the matter asserted within them, but rather claimed that the reports were <u>false</u>. <u>See, e.g.</u>, <u>United States v. Sliker</u>, 751 F.2d 477, 489 (2d Cir. 1984); <u>United States v. Coven</u>, 662 F.2d 162, 174 (2d Cir. 1981). Instead, the defendants argue that the reports were needlessly cumulative of other direct testimony offered at trial. <u>See</u> Fed. R. Evid. 403. For example, they point out, the District Court excluded the use-of-force report prepared by Captain Darryll Lago because Captain Lago himself testified at trial about the events he described in the report.

This argument ignores the important purpose for which Rentas offered the reports into evidence: to show that the defendants submitted <u>false</u> reports in an effort to justify their use of force and deny Rentas a fair trial. Indeed, the submission of false reports was the principal way in which Rentas could show that the defendants interfered with his right to a fair trial given the jury instruction that Rentas had the burden of proving that the defendants "knowingly forwarded false information to prosecutors . . . that [was] likely to influence a jury verdict to convict," with the intent "to deprive a plaintiff of his right to liberty and to a fair trial." Joint App'x 3146-47. Nor were these

reports cumulative. They were central to Rentas's fair trial, excessive force, and failure to intercede claims, and the District Court's decision to exclude them was error.[1] We also conclude that there is a substantial likelihood that their erroneous exclusion affected the outcome of the trial. Indeed, during the jury's deliberations, the jurors asked to see a few of the reports that had been excluded, obviously to no avail. "[W]e are especially loath to regard any error as harmless in a close case" such as this one, Hester v. BIC Corp., 225 F.3d 178, 185 (2d Cir. 2000) (quotation marks omitted), where the jury appears to have found that there was some unjustified use of force and interference with Rentas's fair trial rights. In response, the defendants point out that Rentas had the opportunity to cross-examine the witnesses based on information contained in their reports. We are not persuaded that this sufficiently addressed the prejudice caused by the exclusion of the reports. Again, Rentas could have used the reports not only to impeach the defendants,[2] but more importantly to prove that the defendants submitted

[1] We note, too, that on remand these reports may be relevant to Rentas's malicious prosecution claim.

[2] For example, the record suggests there were some inconsistencies between two of the reports and the relevant testimony at trial. Officer Baker prepared

14

false reports to the District Attorney that facilitated and tainted the decision to prosecute him in violation of his right to a fair trial. Because the error was not harmless, we vacate the judgment as to the fair trial, excessive force, and failure to intercede claims and remand for a new trial.[3]

### 3. Rentas's Remaining Arguments

Because Rentas is entitled to a new trial on his excessive force, fair trial, and failure to intercede claims, we need not consider his remaining arguments.[4] Nevertheless, we provide some guidance to the District Court in connection with any further trial proceedings in this case, as certain issues are

---

a report that was unsigned and omitted observations about Captain Ruffin. Officer Baker later rewrote the report and submitted an addendum about Captain Ruffin. The District Court admitted the latter report, but not the former. In addition, a report prepared by Captain Clayton but excluded from the trial record suggested that there was a directive to move inmates from one part of the dorm to another and that Rentas was told to move pursuant to that directive. At trial, however, Clayton testified that she was not aware of that directive.

[3] Rentas urges this Court to assign his case to a different district court judge in the interest of "preserving the appearance of fairness." Plaintiff's Br. 74. We decline to do so.

[4] For example, Rentas has argued that he was entitled to a jury instruction on failure to intercede relating to his fair trial claim. Because we remand for a new trial, we need not speculate on whether the evidence presented on remand will warrant such an instruction.

likely to recur at trial. In particular, we reject two arguments Rentas raised about the District Court's jury instructions: first, that the court erroneously permitted the jury to award nominal damages for the excessive force and fair trial claims, and second, that it failed to instruct the jury on assault and battery.

A. Nominal Damages

"[W]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) (quoting Ricciuti, 124 F.3d at 130). Because Rentas was detained for three years due to the defendants' alleged misconduct, he argues that the District Court was required to instruct the jury to award compensatory, rather than nominal, damages if it found any defendant liable for violating Rentas's right to a fair trial. As support, Rentas cites Kerman v. City of New York, 374 F.3d 93, 124 (2d Cir. 2004), in which we explained that a "plaintiff is entitled to an award of compensatory damages as a matter of law" when the jury has "found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff." Id.

But in Kerman we also noted that "[a] finding that the plaintiff has been deprived of a constitutional right does not automatically entitle him to a substantial award of damages." Id. at 123. "[W]hen a defendant has deprived the plaintiff of liberty[,] . . . but the . . . adverse action would have been taken even" in the absence of the wrongful conduct, "the plaintiff . . . is entitled only to nominal damages." Id.; see also Carey v. Piphus, 435 U.S. 247, 266-67 (1978) (holding that students that were suspended without a proper hearing could be awarded nominal damages if the District Court concluded their suspensions would have been justified even if they received a hearing).

In Rentas's case, the District Court instructed the jury that it could find in his favor on the fair trial claim if it found that "a government official . . . knowingly created false information" that was "likely to influence a jury verdict to convict" and forwarded that information to prosecutors; that Rentas's "criminal prosecution cause[d] a reasonably foreseeable loss of liberty"; and that the government official "specifically intend[ed] to deprive a plaintiff of his right to liberty." Joint App'x 3146-47 (emphasis added). Two aspects of this jury charge lead us to conclude that the District Court did not

err in instructing the jury on nominal damages. First, the instructions permitted the jury to find a defendant liable if the "criminal prosecution" caused Rentas's loss of liberty, even if the defendant did not cause the loss of liberty directly. And second, the District Court was correct not to require Rentas to prove that the criminal prosecution lacked probable cause, since probable cause is not a defense to a fair trial claim. Ricciuti, 124 F.3d at 129-30. Although, as we explained above, there was a genuine dispute at summary judgment over whether the District Attorney's office relied on independent, untainted probable cause in prosecuting Rentas, the jury reasonably could have resolved that dispute in the defendants' favor after trial.[5] It follows, then, that even if Rentas suffered a loss of liberty due to the "criminal prosecution," the jury reasonably could have found that the loss of liberty was not caused by the defendants' alleged fabrication of evidence, but rather by whatever independent, untainted evidence supported probable

[5] As previously noted, on summary judgment as to Rentas's malicious prosecution claim, there was, in our view, sufficient evidence to conclude that the Bronx County prosecutors lacked probable cause independent of and untainted by information supplied by the defendants. A jury finding at any retrial on remand that the prosecution was supported by independent, untainted probable cause would defeat Rentas's malicious prosecution claim, but not his fair trial claim.

18

cause. In this case, the jury found that some defendants fabricated evidence while others did not. The jury could have also found that the submission of the non-fabricated evidence would have resulted in Rentas's loss of liberty even in the absence of the fabricated evidence. Given these circumstances, the District Court did not err in instructing the jury that it was entitled to award nominal rather than compensatory damages on Rentas's fair trial claim.[6]

Rentas likewise argues the jury should have been compelled to award him compensatory damages for his excessive force claim because there was "undisputed evidence of compensable injuries in this case." Plaintiff's Br. 36-37. According to Rentas, the jury had to accept either the defendants' portrayal of the events or his own. Under the defendants' version, Rentas attacked the correctional staff, including Captain Ruffin, and suffered injuries to his head before being handcuffed. Under Rentas's version, the defendants punched, kicked, and pepper sprayed Rentas after Captain Ruffin first placed him in handcuffs. Rentas suggests that the jury, which found Captain Ruffin

[6] The parties disagree as to the nature of the right in question, and specifically disagree as to how causation operates in this context. Whatever the correct resolution of that issue, the jury instructions given here on the fair trial claim allowed for a finding of nominal damages. Neither party objected to those instructions, and, consequently, we are not now required to decide whether they were proper.

liable, must have credited his version of events. If that were so, he reasons, it should have awarded him compensatory damages since he testified that he was beaten while handcuffed. See Haywood v. Koehler, 78 F.3d 101, 105 n.2 (2d Cir. 1996) ("If . . . a handcuffed prisoner[] was assaulted in a cell . . . such an assault would necessarily warrant some compensatory damages, at least for pain and suffering, even if no lacerations or other observable injuries resulted."). But Rentas's portrayal of the evidence is too rigid. We are less certain that the nature and cause of Rentas's injuries were undisputed, particularly where, as here, both justified and excessive force was arguably used. See Gibeau v. Nellis, 18 F.3d 107, 110 (2d Cir. 1994). As the defendants note, the jury was permitted to "piece together its account of what happened." Defendants' Br. 41. The jurors could "accept bits of testimony from several witnesses and . . . make reasonable inferences from whatever testimony they credited." Haywood, 78 F.3d at 105. Thus, the District Court did not err in instructing the jury on nominal damages.

B. Assault and Battery

Rentas also argues that the District Court should have instructed the jury separately on assault and battery under New York State law, which uses

the lower "objective reasonableness" standard commonly seen in Fourth Amendment cases rather than the stricter Eighth Amendment standard that governs his excessive force claim and requires a jury to find that force "was applied . . . maliciously and sadistically to cause harm." Hogan v. Fischer, 738 F.3d 509, 516 (2d Cir. 2013) (quotation marks omitted); see Graham v. Connor, 490 U.S. 386, 397 (1989) (describing the objective reasonableness standard under the Fourth Amendment).

Even assuming that Rentas is correct that the elements of an Eighth Amendment excessive force claim differ from the elements of an assault and battery claim in this context, Rentas was not entitled to a separate jury charge. When pressed by the District Court on how the trial evidence would allow the jury to find the defendants liable for assault and battery without also finding them liable for the use of excessive force, Rentas did not point to specific evidence, but argued only that "they are two different legal theories." Joint App'x 2989. Rentas also fails to acknowledge on appeal that the District Court actually incorporated the lower "objective reasonableness" standard in its jury charge on excessive force, instructing the jury that if it found "the amount of force was greater than a reasonable corrections officer would have

employed under the circumstances, the plaintiff will have proved by a preponderance of the evidence that he was deprived of . . . [his Eighth Amendment] right."[7]  Joint App'x 3145.  Since these instructions were just as favorable to Rentas as those he requested on assault and battery, we conclude that the District Court did not err in declining to separately instruct the jury on assault and battery.

    4.  The Cross-Appeal

        Following the jury's verdict in Rentas's favor, all of the defendants moved under Rule 50 to dismiss Rentas's IIED claim as a matter of law.  The District Court denied the motion but for unexplained reasons entered judgment against only Captain Ruffin.   On appeal, Captain Ruffin challenges the denial of the motion for judgment as a matter of law but does not separately attack the jury's verdict.[8]  His challenge rests on four main

---

[7] The defendants do not challenge the District Court's jury instructions on excessive force.  We therefore need not consider whether the District Court erred in instructing the jury that it could find the defendants liable for the use of excessive force based only on a finding that the defendants used force that was objectively unreasonable.

[8] The District Court entered judgment on the IIED claim against only Captain Ruffin, even though the jury found in Rentas's favor on his IIED claim "against defendants."  Joint App'x 3211, 3312.  At trial, Rentas maintained

22

grounds: (1) the IIED claim is barred because the New York statute of limitations expired by the time Rentas filed his complaint; (2) Rentas failed to file a sufficiently detailed notice of claim as required by Section 50-e of the New York General Municipal Law; (3) the evidence was legally insufficient to find Captain Ruffin liable for IIED; and (4) the IIED claim fell within the ambit of the other claims Rentas asserted against the defendants. We briefly address each of these grounds in turn.

---

that New York City should be vicariously liable for any damages the jury awarded him for his IIED claim and proposed that the District Court instruct the jury to determine only whether he had proven his IIED claim against any of the defendants. The District Court agreed and assured Rentas that it would entertain a post-verdict motion to enter judgment against the City if Rentas prevailed on his state-law claims. After the verdict, Rentas filed a motion for a new trial on damages, which included a request that the District Court enter judgment against the City for assault and battery (but not for IIED). The District Court denied the motion without addressing the City's liability and entered judgment against Ruffin only. In a footnote in his brief on appeal, Rentas purports to challenge the omission of the City as a defendant, Plaintiff's Br. 1 n.1, but does not otherwise make any arguments in support of that challenge. We exercise our discretion not to consider arguments raised only in a footnote. New York Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125, 128 n.3 (2d Cir. 2015); Dow Jones & Co. v. Int'l Sec. Exch., Inc., 451 F.3d 295, 301 n.7 (2d Cir. 2006). Because Rentas is entitled to a new trial, we need not now determine whether the District Court erred in failing to enter judgment against the City, and we leave it to the District Court on remand to determine whether to reinstate the City as a named defendant on the caption.

A. <u>Statute of Limitations</u>

Rentas filed his complaint on August 18, 2010. In New York, an IIED claim must be brought within one year of the injury. N.Y. C.P.L.R. 215(3). But when, as in this case, a plaintiff sues the City (or an individual whom the City must indemnify), a one-year-and-90-day statute of limitations applies. <u>See</u> N.Y. Gen. Mun. Law § 50–i; <u>Ruggiero v. Phillips</u>, 739 N.Y.S.2d 797, 799-800 (4th Dep't 2002). Because the altercation between Rentas and the Rikers staff occurred on July 12, 2007, the defendants argue Rentas should have filed his complaint by October 12, 2008.

We disagree. The IIED claim involved continuous tortious conduct and injury that spanned the criminal proceedings against Rentas and ended only when the criminal charges were dismissed on August 2, 2010. Under New York law, the statute of limitations on an IIED claim involving a continuous injury does not begin to run until the conduct ceases. <u>See, e.g.</u>, <u>Shannon v. MTA Metro-North R.R.</u>, 704 N.Y.S.2d 208, 209 (1st Dep't 2000); <u>Ain v. Glazer</u>, 683 N.Y.S.2d 241, 242 (1st Dep't 1999); <u>Drury v. Tucker</u>, 621 N.Y.S.2d 822, 823 (4th Dep't 1994); <u>cf.</u> <u>Dumas v. Levitsky</u>, 738 N.Y.S.2d 402, 408 (3d Dep't 2002). Rentas's claim therefore was not time-barred.

## B. The Notice of Claim

Nor are we persuaded that Rentas failed to comply with the requirements of New York's Municipal Law by omitting his IIED claim from his notice of claim. Under New York law, a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action. See Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999). Although the notice must set forth "the nature of the claim," N.Y. Gen. Mun. Law § 50-e, it need not "state a precise cause of action in haec verba," DeLeonibus v. Scognamillo, 583 N.Y.S.2d 285, 286 (2d Dep't 1992). In this case, Rentas's notice of claim alleged "[v]iolation of civil rights; battery; denial of medical care; and negligent screening, hiring, training, supervising and retaining of police officers." Joint App'x 346. This description adequately notified the municipal defendants that Rentas might bring an IIED claim against them.

## C. Sufficiency of the Evidence

We also reject Captain Ruffin's argument that the trial evidence of IIED was insufficient. In order to establish liability for IIED, a plaintiff must prove that the defendants exhibited "(1) extreme and outrageous conduct" with the

25

"(2) intent to cause severe emotional distress," that there was "(3) a causal connection between the conduct and the injury," and that "(4) severe emotional distress" resulted.  Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996).  The defendants argue that Rentas's IIED claim fails because there was no medical evidence that he suffered emotional injuries.  Even assuming that medical evidence is required in order to prevail on an IIED claim, there was sufficient evidence in the record to sustain the jury's verdict.  Rentas's hospital records reflected that he complained of anxiety, stress, depression, and post-traumatic stress disorder and was receiving mental health treatment.  Rentas also testified at trial that he suffered "mental health problems" and "emotional injuries" arising from the July 2007 altercation.  Joint App'x 2656, 2659.  The medical records and testimony sufficed for the jury to find in Rentas's favor on the IIED claim.

### D. Duplication of Other Claims

Finally, the defendants argue that Rentas's IIED claim fell within the ambit of his other tort claims.  In Fischer v. Maloney, 43 N.Y.2d 553, 557-58 (1978), the New York Court of Appeals suggested that "it may be questioned whether . . . [IIED] should be applicable where the conduct complained of

falls well within the ambit of other traditional tort liability." But the Court of Appeals did not hold that liability for IIED is <u>never</u> appropriate when the underlying conduct may overlap with other torts. See <u>Bender</u>, 78 F.3d at 792 (2d Cir. 1996) ("[T]he initiation of a false charge, with sadistic intent and for the purpose of subjecting Bender to the prosecution system, could be found to involve additional elements not necessarily comprehended by the torts of false arrest or malicious prosecution."). In any event, here the District Court was careful to instruct the jury specifically that any damages it awarded Rentas for the IIED claim must be separate from the emotional damages it awarded him for other claims. Any error that may have occurred from the potential overlap of these claims was therefore harmless.

For these reasons, we affirm the District Court's denial of the defendants' Rule 50 motion.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the District Court's judgment as to the claim of intentional infliction of emotional distress, **VACATE** the District Court's judgment as to the malicious prosecution, excessive force, fair

27

trial, and failure to intercede claims, and **REMAND** for further proceedings consistent with this opinion.