22-2895-pr
Baltas v. Maiga

# United States Court of Appeals
## for the Second Circuit

August Term, 2023

(Argued: April 19, 2024        Decided:  October 11, 2024)

Docket No. 22-2895-pr

_____

JOE BALTAS,

*Plaintiff-Appellant*,

v.

DAVID MAIGA, In his Individual and Official Capacities, ROLLIN
COOK, In his Individual and Official Capacities, ANGEL QUIROS,
In his Individual and Official Capacities, JESSICA SANDLER, In her
Individual and Official Capacities, JACLYN OSDEN, In her
Individual and Official Capacities,

*Defendants-Appellees.*

_____

Before:

PARKER, LOHIER, and NATHAN, *Circuit Judges*.

Joe Baltas, a Connecticut state prisoner, was transferred to the custody of
the Virginia Department of Corrections ("VADOC") pursuant to the Interstate
Corrections Compact.  Baltas alleges that VADOC officials threatened him for
filing a grievance while he was incarcerated at Red Onion State Prison ("ROSP")
in Virginia.  Baltas separately claims that officials with the Connecticut
Department of Corrections ("CTDOC") failed to comply with their obligation to

review his classification as an administrative segregation ("Ad Seg") prisoner in the CTDOC system even while he was incarcerated in Virginia. Baltas sued several CTDOC officials, principally arguing that the failure to review his Ad Seg classification violated his due process rights under the Fourteenth Amendment, and that his treatment at ROSP violated his First, Sixth, and Eighth Amendment rights. After determining that CTDOC adequately reviewed Baltas's Ad Seg classification, the United States District Court for the District of Connecticut (Shea, *J.*) granted summary judgment in favor of the Defendants on his due process claim. The District Court also granted summary judgment in favor of the Defendants on Baltas's First, Sixth, and Eighth Amendment claims arising from his incarceration in ROSP because it concluded that Baltas failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Baltas appeals both rulings, as well as the dismissal of other claims at earlier stages of litigation. We hold that the periodic reviews of Baltas's Ad Seg classification satisfied due process under the circumstances of this case. As to whether VADOC's administrative remedies were available to Baltas, however, we conclude that summary judgment was inappropriate because a genuine dispute of fact exists. In a concurrently issued summary order, we affirm the District Court's dismissal of Baltas's remaining claims. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND**.

JEFFREY A. DENNHARDT (Omar A. Khan, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *for Plaintiff-Appellant*.

DENNIS V. MANCINI, Assistant Attorney General, *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT, *for Defendants-Appellees*.

LOHIER, *Circuit Judge*:

Joe Baltas appeals from a judgment of the United States District Court for the District of Connecticut (Shea, *J.*) dismissing his § 1983 lawsuit against the Defendants, who are current and former officials of the Connecticut Department

of Corrections ("CTDOC"). Baltas's claims arise from his transfer to the custody of the Virginia Department of Corrections ("VADOC") and his incarceration in Red Onion State Prison ("ROSP") in Virginia pursuant to the Interstate Corrections Compact ("ICC"), a law little known to the public.

Before his transfer to ROSP, Baltas was confined to administrative segregation (sometimes referred to as "Ad Seg") in Connecticut. After his transfer to ROSP, VADOC placed Baltas in the general inmate population, where he was attacked by three inmates, resulting in twelve stab wounds to his back. Following the attack, VADOC placed Baltas in ROSP's Restrictive Housing Unit, purportedly for his own safety. Baltas remained in segregation for the remainder of his confinement at ROSP—approximately eighteen months. Baltas claims that during that time, despite CTDOC policy requiring officials to review his Ad Seg status every thirty days, Connecticut officials failed to conduct a single review of his confinement in Virginia.

Baltas principally argues that the Defendants' failure to conduct periodic reviews of his Connecticut Ad Seg status while he remained confined at ROSP in Virginia violates his due process rights under the Fourteenth Amendment. He also alleges violations of his First, Sixth, and Eighth Amendment rights arising

3

from his treatment at ROSP. The District Court granted summary judgment in favor of the Defendants and dismissed Baltas's complaint in its entirety.[1] As for the procedural due process claim, the court held that CTDOC had satisfied its obligation to conduct periodic reviews of Baltas's Ad Seg status. But it declined to address the merits of Baltas's claims under the First, Sixth, and Eighth Amendments, finding that Baltas had failed to exhaust his remedies using VADOC's internal complaint process for those claims.

Now counseled on appeal, Baltas challenges both of the District Court's conclusions. We agree with the District Court that, on the summary judgment record, CTDOC's periodic reviews of Baltas's Ad Seg classification satisfied due process. But we conclude that a genuine dispute of fact exists as to whether VADOC's internal complaint process was available to Baltas, and thus whether Baltas was excused from the requirement that he exhaust administrative remedies. For the reasons provided below, we **AFFIRM** the judgment of the District Court in part, **VACATE** in part, and **REMAND** for further proceedings.

---

[1] In a separate summary order filed concurrently with this opinion, we affirm the District Court's dismissal of Baltas's remaining claims, including those dismissed earlier in the litigation.

BACKGROUND

Baltas is a Connecticut state prisoner who was transferred to VADOC custody and incarcerated in ROSP between December 20, 2019 and July 22, 2021. Baltas was transferred pursuant to the ICC, an interstate agreement to which both Connecticut and Virginia are parties. The ICC provides that a "sending state" may contract to house a prisoner in a correctional institution in a "receiving state[]." Conn. Gen. Stat. § 18-106 art. III(a); Va. Code § 53.1-216 art. III(a). The receiving state acts as "agent for the sending state" when accepting an inmate. Conn. Gen. Stat. § 18-106, art. IV(a). An inmate transferred to an institution in a receiving state "shall at all times be subject to the jurisdiction of the sending state." *Id.* § 18-106 art. IV(c).

Connecticut and Virginia are parties to another agreement (the "Implementing Contract") that governs prisoner transfers between the two states pursuant to the ICC and that establishes the respective responsibilities of each state's correctional department. The Implementing Contract provides that:

> It shall be the responsibility of the administration of the institution in the receiving state to confine inmates from a sending state; to give them care and treatment, . . . to provide for their physical needs; . . . to retain them in safe custody; to supervise them; to maintain proper discipline and control; to make certain that they receive no special privileges and that the sentences

and orders of the committing court in the sending state are faithfully executed.

Joint App'x 327. The Implementing Contract also provides that "[t]he receiving state, as agent for the sending state, shall have physical control over and power to exercise disciplinary authority over all inmates from sending states," and that a transferred inmate "shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed." Joint App'x 328.

Before his transfer, Baltas had been assigned to Ad Seg status in Connecticut. Following his transfer to ROSP, however, VADOC officials placed Baltas on general detention status while they reviewed his security classification. On December 26, 2019, shortly after arriving at ROSP, Baltas filed an "Emergency Grievance" with VADOC related to his general detention confinement. Joint App'x 413. (This turned out to be the only grievance that Baltas filed with VADOC officials while at ROSP.) Following his initial security review, Baltas was assigned to the general prison population.

Baltas's stay with the general population was short-lived. He claims that soon after filing his grievance with VADOC officials, he was threatened by a corrections officer who warned him not to file more grievances. Two weeks

later, Baltas was assaulted and stabbed repeatedly by a group of other inmates, which resulted in his hospitalization. Baltas alleges that ROSP corrections officers orchestrated the attack and that he received further threats from ROSP corrections officers during his hospitalization. Indeed, he alleges, VADOC officials openly confirmed details of the attack, stating that they "set up the attack and we'll set up another," and warning Baltas to "keep [his] mouth shut" because "[t]here is nowhere in Virginia you can go that we can't get you." Joint App'x 115 (quotation marks omitted).

Following the stabbing incident, Baltas was removed from general population and placed in ROSP's Restrictive Housing Unit ("RHU"). The parties disagree about whether Baltas's continued placement in RHU was ever reviewed by ROSP officials. The Defendants say that VADOC conducted monthly reviews of Baltas's RHU status and that Baltas had the option to attend these reviews but declined to do so. The Defendants further assert that VADOC staff repeatedly offered Baltas the opportunity to transfer to less restrictive housing in a different correctional facility, but that Baltas refused. Baltas denies that VADOC conducted any reviews of his RHU status. Regardless, Baltas remained in the

7

RHU for the rest of his time at ROSP. And upon returning to CTDOC custody in July 2021, he was reassigned to Ad Seg confinement.

Here too, the Defendants insist that during the time Baltas was in Virginia, CTDOC conducted reviews of his Ad Seg classification in the CTDOC system every six months. And as he does with the periodic VADOC reviews, Baltas categorically denies that these reviews occurred. Baltas therefore claims in an amended complaint that the Defendants were obligated under the Fourteenth Amendment's Due Process Clause to conduct reviews of his CTDOC Ad Seg classification while he was in VADOC custody, but failed to do so. The District Court granted summary judgment in favor of the Defendants as to this due process claim, concluding that they adduced unrebutted evidence demonstrating that CTDOC had adequately conducted periodic Ad Seg reviews, just as the Defendants assert.

The District Court separately construed Baltas's claims arising from his treatment in Virginia as falling under the First, Sixth, and Eighth Amendments.[2]

---

[2] The relevant claims were: (1) First Amendment claims asserting Baltas was deprived of his rights to the free flow of mail, access to legal communications, and access to the courts; (2) Sixth Amendment right to counsel claims resulting from the implementation of VADOC procedures; and (3) Eighth Amendment claims based on unlawful conditions of confinement and deliberate indifference to his safety while incarcerated at ROSP.

The District Court granted summary judgment in favor of the Defendants as to those claims as well, holding that Baltas had failed to exhaust VADOC's complaint process and administrative remedies as required by CTDOC's regulations for inmates incarcerated out of state, and was thus barred by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), from bringing suit.

This appeal followed.

## DISCUSSION

We review the District Court's grant of summary judgment *de novo*, construing all evidence in the light most favorable to the non-moving party. *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016). "Summary judgment should be affirmed only when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(a).

### I

We begin with the District Court's grant of summary judgment in favor of the Defendants on Baltas's administrative segregation claim.

At the outset, we address the scope of Baltas's challenge in this appeal. In the amended complaint, Baltas claims that the Due Process Clause compelled the Defendants to conduct reviews of his Connecticut Ad Seg classification while he

9

was in VADOC custody, but that they failed to comply. Joint App'x 152 ("The Defendants have failed to conduct mandated Ad. Seg. reviews of Plaintiff's Conn[ecticut] Ad. Seg. classification, improperly keeping him classified as Ad. Seg. in Conn[ecticut]."). In the CTDOC system, Ad Seg is a restrictive confinement status for inmates who pose a "threat to staff, other inmates[,] or facility security." Joint App'x 688.

Baltas's claim about the Defendants' obligation to provide him sufficient review of his *Connecticut* Ad Seg status while he was incarcerated in Virginia falls outside the mine-run of administrative segregation cases. In the typical case, a prisoner is confined to restrictive housing and challenges whether they have received adequate periodic review of the justification for their confinement. *See, e.g.*, *Proctor v. LeClaire*, 846 F.3d 597, 608–09 (2d Cir. 2017). Thus, for an inmate who is placed in Ad Seg because they "represent[] a security threat," *see id.* at 609 (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995)), review of that classification involves an inmate- and facility-specific inquiry into "whether the inmate present[ed] a current threat to the safety of the facility," *id.* at 611.

But Baltas was never confined in a *Connecticut* prison during the time that he alleges that CTDOC failed to review his Connecticut Ad Seg classification. He was confined to the RHU in ROSP for over eighteen months. Acknowledging this anomaly at oral argument, Baltas's counsel urged us to view Baltas's Ad Seg challenge as asking whether CTDOC had the obligation to independently review Baltas's "conditions of confinement" in *Virginia* and determine if "it is appropriate to maintain a defendant like Mr. Baltas here in segregation for more than eighteen months." Oral Arg. Recording at 9:38–:53.

This is not quite the issue before us. Throughout this litigation, Baltas's claim focused on CTDOC's obligation to review his status as a threat to the security of Connecticut facilities, staff, or inmates upon his return to CTDOC custody. *See* Joint App'x 434 (claiming that because CTDOC failed to "review [his] A/S classification" while he was in Virginia, Baltas was "returned to A/S Phase I" upon his return to Connecticut); *Pro Se* Br. 24 ("This prospective injury is exactly what Appellant alleged in his Complaint and is exactly what occurred and what he was subjected to."). After all, Baltas was confined in Ad Seg before he left Connecticut in December 2019 and was returned to Ad Seg when he transferred back to CTDOC custody in July 2021. We therefore agree with the

11

District Court, *see Baltas v. Maiga*, No. 3:20-cv-1177, 2022 WL 3646199, at *21–22 (D. Conn. Aug. 24, 2022), that Baltas's claim raises only the narrower issue of whether CTDOC's review of Baltas's Connecticut Ad Seg classification satisfies the due process requirements of the Fourteenth Amendment. We decline to address the broader and more vexing issue of whether CTDOC was required to review VADOC's decision that Baltas should remain confined to the RHU in Virginia.

**A**

To prevail on a Fourteenth Amendment procedural due process claim, Baltas must demonstrate "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process." *Proctor*, 846 F.3d at 608 (quoting U.S. Const. amend. XIV, § 1). The District Court held that the Defendants had not contested that Baltas had a liberty interest at stake in his classification as an Ad Seg inmate in the CTDOC system. Because the Defendants do not challenge that determination on appeal, we assume without deciding that Baltas's continued classification as an Ad Seg inmate in Connecticut during his confinement at ROSP implicates a constitutionally protected interest in "life, liberty, or property." *Id.* (quoting U.S.

12

Const. amend. XIV, § 1). So the "sole issue before us on this claim is whether Defendants afforded [Baltas] sufficient process" with respect to his Connecticut Ad Seg classification. *See id.*

In *Proctor v. LeClaire,* we addressed the process due an inmate in Ad Seg confinement. Provided that a liberty interest is implicated by the restrictive housing status, we said, the inmate is entitled to "'some sort of periodic review of the confinement,'" to "verify that the inmate 'remains a security risk' throughout his term." *Id.* at 609 (quoting *Hewitt*, 459 U.S. at 477 n.9). "The purpose of these periodic reviews is to ensure that the state's institutional interest justifying the deprivation of the confined inmate's liberty has not grown stale and that prison officials are not using Ad Seg as 'a pretext for indefinite confinement of an inmate.'" *Id.* (quoting *Hewitt*, 459 U.S. at 477 n.9).

Faced with a challenge to the adequacy of these reviews, however, we cannot review the substance of a decision to keep an inmate in administrative segregation. Instead, we evaluate only "whether Defendants' method for coming to their Ad Seg determinations is sufficient." *Id.* at 608. In doing so, we keep in mind that administrative segregation reviews are designed to be "flexible and may be based on 'a wide range of administrative considerations,' including but

13

not limited to observations of the inmate in Ad Seg, 'general knowledge of prison conditions,' misconduct charges, ongoing tensions in the prison, and any ongoing investigations." *Id.* at 609 (quoting *Hewitt*, 459 U.S. at 477 n.9).

The Constitution imposes a "ceiling on that flexibility." *Id.* at 601. In conducting these reviews, prison officials must "actually evaluate whether the inmate's continued Ad Seg confinement is justified." *Id.* at 610. They may not merely "[r]eview with a pre-ordained outcome." *Id.* Reviewing officials must also "evaluate whether the justification for Ad Seg exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available." *Id.* at 611. And of course, the "reviewing officials must maintain institutional safety and security (or another valid administrative justification) as their guiding principles throughout an inmate's Ad Seg term." *Id.*

**B**

With these principles in mind, we conclude that CTDOC's review of Baltas's Connecticut Ad Seg classification satisfies the due process requirements of the Fourteenth Amendment.

To start, it is true that CTDOC Administrative Directive 9.4[3] required the Defendants to conduct reviews of Baltas's Connecticut Ad Seg classification every thirty days and that there is neither evidence nor even a claim that they complied with the thirty-day review requirement. But a violation of state regulations is not "enough generally to establish a constitutional claim." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). The question before us is whether, despite the regulatory violation, CTDOC's reviews nevertheless comported with due process.

The Defendants adduced evidence that CTDOC conducted four regular classification reviews of Baltas's status while he was in Virginia. As Jaclyn Osden, a Defendant who oversees the Interstate Corrections Compact Unit, explained, CTDOC conducted "regular classification reviews" in January 2020, July 2020, January 2021, and July 2021, and "reviewed any new information regarding Mr. Baltas to determine if any of his scores should be adjusted." Joint App'x 351. Osden added that the classification scores include an assessment of "risk scores (escape history, severity or violence of current offense, history of violence, length of confinement, presence of pending charges and/or detainers,

[3] We cite to the versions of the CTDOC Administrative Directives in place at the time Baltas filed suit.

discipline history, security risk group membership, and overall risk score)."

Joint App'x 351.

We conclude that CTDOC's classification reviews, as described by Osden,

satisfy the minimal requirements of due process under the circumstances of this

case, where the inmate is incarcerated out of state and where there is no evidence

that the inmate's Ad Seg status in the sending state affects his confinement in the

receiving state. CTDOC Administrative Directive 9.2 defines "classification" as

"collecting and evaluating information about each inmate to determine the

inmate's risk and need level for appropriate confinement location." CTDOC

Administrative Directive 9.2 § 3(A).[4] An initial classification review occurs

shortly after an inmate is incarcerated, and reclassification reviews generally

occur every six months. *Id.* §§ 9, 10. Each inmate is assigned a classification from

risk level 1 to 5. *Id.* § 6. A classification of risk level 5 results in assignment to Ad

Seg status. *Id.* § 12(C). The factors considered in risk level assessments are

_____

[4] Although it was not included in the record on appeal, we take judicial notice of CTDOC Administrative Directive 9.2. *See* Administrative Directive 9.2, Inmate Classification, Conn. Dep't of Corr., https://portal.ct.gov/-/media/doc/pdf/ad/ad9/ad_0902_effective_07012006.pdf [https://perma.cc/2R9Z-C7K2] (effective July 1, 2006); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (holding that it was proper for the district court to take judicial notice of state prison regulations).

precisely the factors stated in Osden's declaration.  They include an evaluation of an inmate's escape history, history of violence, length of sentence, and discipline history.  *Id.* § 8(A).

Baltas argues that the Defendants failed to consider whether it was necessary to keep him in administrative segregation.  But the classification review factors relate directly to "the inmate's potential for violence, escape, or disruption of the orderly functioning of a facility or other place of confinement." *Id.* § 8(A).  In other words, the factors involved in risk level assessment required that the Defendants determine whether Baltas "'*remain*[*ed*] a security risk' on the date of the periodic review," and thus "whether the justification for Ad Seg exists at the time of the review or will exist in the future."  *Proctor*, 846 F.3d at 611 (quoting *Hewitt*, 459 U.S. at 477 n.9).

CTDOC's reviews likewise accounted for "any new information regarding . . . Baltas to determine if any of his scores should be adjusted," Joint App'x 351, and CTDOC regularly received information from VADOC officials regarding Baltas's conduct in ROSP and his interactions with other prisoners there.  In addition, CTDOC's Interstate Management Unit "maintained regular

17

communication with [the] Virginia Interstate Compact Coordinator and received progress reports" about Baltas. Joint App'x 291.

Baltas attempts to dispute this evidence by claiming that Defendant Maiga's statement in a response to interrogatories—"if [Baltas] returned to Connecticut, he would be required to participate in the [administrative segregation] program and *would have* reviews," Joint App'x 542.08 (emphasis added) —contradicts Osden's statement that the classification reviews actually occurred in this case. But Maiga's statement does not contradict the Defendants' evidence that they conducted periodic classification reviews while Baltas was incarcerated in Virginia. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]here must be evidence on which the jury could reasonably find for the plaintiff.").

Taking a different tack and accepting for argument's sake that the classification reviews took place, Baltas also attempts to cast doubt on their accuracy by contending that they completely overlooked the fact that he was not disciplined for over a year. But this claim, even if true, amounts to an impermissible request that we "review the substance of Defendants' decision" to

18

retain Baltas's Ad Seg classification while he remained in VADOC custody. *Proctor*, 846 F.3d at 608.

"[M]indful of the context in which this case arises and the deference we owe prison officials in carrying out their daily tasks," *id.*, we conclude that, on this record, Baltas received the process due him as an ICC inmate challenging the sufficiency of reviews of his administrative segregation classification in Connecticut, the sending state. In finding these reviews constitutionally adequate, we again emphasize that Baltas's claim differs from the typical administrative segregation case as illustrated in *Proctor*, in that Baltas was not confined in a Connecticut prison during the time that he alleges that CTDOC failed to review his Connecticut Ad Seg classification. Further, the record demonstrates that Baltas's continued Ad Seg status in Connecticut had little impact on Baltas's restrictive housing in Virginia, given that the ICC and the Implementing Contract assign VADOC the responsibility to confine, discipline, and supervise transferred inmates. *See* Joint App'x 327. We thus agree with the District Court that reviews of Baltas's Connecticut Ad Seg status "did not implicate *Proctor*'s due process concerns" to the same degree as was the case in *Proctor* itself. *Baltas*, 2022 WL 3646199, at *12. Our analysis does not address

whether we would come to the same conclusion had Baltas been confined in Ad Seg at a CTDOC facility at the time of the relevant reviews.

We accordingly affirm the District Court's grant of summary judgment for the Defendants on Baltas's due process claim.

## II

We turn next to the District Court's grant of summary judgment in favor of the Defendants on Baltas's claims under the First, Sixth, and Eighth Amendments, which arise from his incarceration and treatment at ROSP in Virginia. Recall that the District Court dismissed these claims under the PLRA after finding that Baltas had failed to exhaust his administrative remedies with VADOC, as CTDOC's regulations require for inmates incarcerated out-of-state.

The PLRA prohibits "a prisoner confined in any jail, prison, or other correctional facility" from bringing an action under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[P]risoners are exempt from the exhaustion requirement," however, "when administrative remedies are 'unavailable.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 311 (2d Cir. 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). A remedy is unavailable when "(1) it operates as a simple dead end—with officers unable

or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that it becomes, practically speaking, incapable of use; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (quotation marks omitted).

CTDOC Administrative Directive 9.6 establishes procedures for the exhaustion of administrative remedies by Connecticut inmates. In particular, Administrative Directive 9.6 § 5(K) provides that "Connecticut inmates housed in other states/jurisdictions must utilize and exhaust the Inmate Administrative Remedies Process of the receiving state/jurisdiction for an issue relating to any aspect of an inmate's confinement that is subject to the receiving state/jurisdiction's authority." Joint App'x 503.06. "[U]pon exhausting the receiving state/jurisdiction's Inmate Administrative Remedies Process," a Connecticut inmate has thirty days thereafter to file a grievance with CTDOC. Joint App'x 503.06.

Baltas acknowledges that he did not exhaust VADOC's grievance process but asks us to excuse his failure to exhaust for two reasons. First, he contends that threats and intimidation by VADOC staff rendered the grievance process

21

unavailable to him.  Second, he argues that the structure of CTDOC's two-state

exhaustion process is "so opaque that it [is], practically speaking, incapable of

use" and thus unavailable under the PLRA.  Appellant's Br. 50 (quoting *Ross*, 578

U.S. at 643).

As we explain below, we address the first argument only.

**A**

To determine whether a grievance process has been rendered

"unavailable" through "threats or other intimidation by prison officials," we

consider whether the intimidating acts "would have deterred a similarly situated

individual of ordinary firmness from utilizing the grievance procedures."

*Lucente*, 980 F.3d at 312–13 (quotation marks omitted).  Such threats and

intimidation must occur "in connection with the grievance process itself."  *Id.* at

312.  A "generalized fear of retaliation . . . is insufficient as a matter of law to

support a finding that the grievance process was unavailable."  *Id.*  The plaintiff

bears the burden of establishing unavailability.  *See Saeli v. Chautauqua County*, 36

F.4th 445, 453 (2d Cir. 2022).

The District Court rejected as "wholly speculative and lacking

substantiation" Baltas's argument that threats and intimidation by VADOC staff

22

rendered VADOC's grievance process unavailable to him. Baltas, the court observed, failed to describe "any specific dates or individuals who threatened him with violence or retribution if he filed any further grievances in Virginia." *Baltas*, 2022 WL 3646199, at *12. For their part, the Defendants do not dispute that Baltas was viciously attacked. Instead, they argue that the summary judgment record simply fails to substantiate Baltas's allegation that VADOC officials threatened him or incited the stabbing.

We disagree. At summary judgment, Baltas was "entitled to rely on his own testimony to establish" that VADOC's grievance process was unavailable to him in order to overcome his failure to exhaust administrative remedies under the PLRA. *See Rentas*, 816 F.3d at 221; *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("[D]istrict courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." (quotation marks omitted)). In two sworn affidavits, Baltas identified specific individuals who made specific threats to Baltas, warning him not to complain or file a grievance with VADOC. For example, Baltas asserted that one of his grievances prompted a "Sgt. B. Meade" to threaten that if Baltas continued "writing everything up and filing lawsuits we will get you out of the

23

way," meaning "dead, son, dead." Joint App'x 90 (quotation marks omitted).

Meade added that ROSP staff had years earlier "arranged the death of another

troublesome inmate" and "got away with it." Joint App'x 90 (quotation marks

omitted). Baltas further asserted that Meade enlisted other inmates to stab him

"in exchange for favorable treatment[]." Joint App'x 91. When a stabbing

occurred in the unit on January 13, 2020, according to Baltas, VADOC officials,

including "AW Fuller, UM Miller," and "Capt. Franklin" prohibited further

searches of the unit, preventing officers from removing any weapons that

inmates had. Joint App'x 524. On January 18, 2020, another inmate stabbed

Baltas with a "shank" supplied by Meade, landing Baltas in the hospital. Joint

App'x 91, 524–25. "Captain S. Franklin" later entered his hospital room and took

responsibility for the attack, stating, "we'll set up another one if you don't keep

your mouth shut." Joint App'x 91 (quotation marks omitted).

And although it was not necessary for him to do so, Baltas corroborated

his description of Meade's conduct with the sworn statements of another ROSP

inmate, Jesse Thompson, who confirmed that Meade solicited him and "Tipton"

to attack Baltas and supplied Tipton with a "shank" to do so. Joint App'x 160,

592–93. Thompson added that other ROSP staff including "RHU Manager Eric

24

Miller" and "Lt. James Lambert" also urged him to attack Baltas in return for special privileges, Joint App'x 593, and Miller, Lambert, and "Captain Franklin" threatened Baltas and solicited other prisoners to assault him, Joint App'x 593–94. Even more, a VADOC report regarding the January 18 stabbing incident notes that after inmate "R. O'Neil" began stabbing Baltas with a sharpened piece of metal, another inmate "C. Bradley" sought to intervene to help Baltas, but was prevented from doing so by "A. Tipton," who hit Bradley. Joint App'x 580. Baltas has thus produced "hard evidence" consisting of "testimony from personal knowledge . . . showing that his version of events is not wholly fanciful." *Saeli*, 36 F.4th at 455 (cleaned up); *cf. id.* at 457.

To be sure, the Defendants adduced contrary evidence, including declarations from "Grievance Coordinator Meade" and ROSP Warden Fuller, that forcefully rebuts Baltas's sworn statements. Joint App'x 395; Suppl. App'x 19–20. But these conflicting accounts of what transpired serve only to confirm our conclusion that a genuine dispute of fact exists as to whether VADOC's administrative grievance process was rendered unavailable as a result of threats and intimidation directed at Baltas by prison staff. A reasonable jury could credit Baltas's assertion that he was "threatened [and] warned" by specific

25

individuals "not to complain or file a grievance" in a way that would deter "a similarly situated individual of ordinary firmness from utilizing the grievance procedures" at ROSP. *Lucente*, 980 F.3d at 312, 313.

The Defendants point out that Baltas nevertheless proceeded to grieve his complaints about ROSP staff and conditions in Virginia directly to CTDOC officials in Connecticut. Doing so, they claim, would prompt officials to "investigate and communicate about the grievances with the same [VADOC] officials who plaintiff claims engaged in the misconduct and threatened him." Appellees' Br. 50. It is simply not plausible, the Defendants maintain, that Baltas would be deterred from filing grievances directly with VADOC but willing to file the same grievances with CTDOC and risk being subjected to the same threats and retaliation.

We reject this argument. First, as noted above, the availability inquiry uses an objective standard rather than a standard that explores the plaintiff's subjective fears of harm. *See Lucente*, 980 F.3d at 311–12. Second, Baltas's decision to bypass VADOC's internal grievance system and grieve instead with CTDOC does not undermine his claim that he was "thwart[ed] . . . from taking advantage of a grievance process through . . . intimidation." *Id.* at 311 (quotation

marks omitted). As we have explained, "threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Id.* (quotation marks omitted). Grieving directly to the corrections department in the sending state, for example, "may enable an inmate to draw outside attention to his complaints, thereby neutralizing threatened retaliatory conduct from prison employees." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004), *abrogated on other grounds by Ross*, 578 U.S. 632; *see id.* (holding that a prisoner's decision to write to a supervisory official and file a lawsuit rather than employing a grievance process failed to establish that the plaintiff "was not—as a matter of law—sufficiently frightened as to render normal grievance procedures unavailable").

For these reasons, the District Court erred in concluding that, on this record, the VADOC grievance process was available to Baltas as a matter of law. We therefore vacate the judgment insofar as it dismissed Baltas's First Amendment claims regarding his access to mail, interference with legal communications and access to the courts, his Sixth Amendment right to counsel

27

claims resulting from the implementation of the VADOC procedures, and his

Eighth Amendment claims based on unlawful conditions of confinement and

deliberate indifference to his safety while incarcerated at ROSP, and remand to

the District Court for further proceedings.[5]

B

Because we conclude only that VADOC's administrative remedies were

not available to Baltas on this record, we do not address the merits of the claims

or other bases for dismissal not yet addressed by the District Court, such as the

evidence of each Defendant's personal involvement in the alleged constitutional

violations. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal

involvement of defendants in alleged constitutional deprivations is a prerequisite

to an award of damages under § 1983." (quotation marks omitted)). Nor do we

address Baltas's alternative argument that he was not required to exhaust

VADOC administrative remedies because Connecticut's two-state exhaustion

requirement is "so opaque that it becomes, practically speaking, incapable of

---

[5] Given our reinstatement of these claims, we also vacate the District Court's dismissal of Baltas's related state claims under Sections 8, 9, 10, 12, 14, and 20 of Article One of the Connecticut Constitution. *See* Joint App'x 143–47; *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015). The District Court, having dismissed the federal claims, declined to exercise supplemental jurisdiction over these state claims.

use," *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quotation marks omitted), and impermissibly requires inmates to "reach across jurisdictional lines to take advantage of grievance systems that are no longer available to them," Appellant's Br. 52 (quoting *Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) (summary order)). The District Court appeared to assume without deciding that Connecticut's two-state exhaustion requirement was valid and declined to address Baltas's arguments about administrative opacity. "In general, we refrain from analyzing issues not decided below." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (2d Cir. 2004). Moreover, Baltas's argument that the CTDOC grievance system impermissibly required him to reach across jurisdictional lines was never presented to the District Court and therefore is not properly before us. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 73 (2d Cir. 1995). We decline to address these arguments in the first instance. The District Court may address them if Baltas raises them on remand.

## CONCLUSION

We have considered Baltas's remaining arguments on appeal, and we conclude that they are without merit. For the foregoing reasons, and for those set forth in the accompanying summary order, we **AFFIRM** the judgment of the District Court in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.